781 F.2d 1545
 NATIONAL INDUSTRIES, INC., a corporation, Plaintiff,
Counter-Defendant-Appellee, Cross-Appellant,
v.
SHARON STEEL CORPORATION, a foreign corporation, Defendant,
Counter-Claimant, Appellant, Cross-Appellee.
 No. 85-3084.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 13, 1986.
 
 Todd A. Cowart, Miami, Fla., for Sharon Steel Corp.
 Bruce R. Kaster and Ralph J. McMurphy, Ocala, Fla., for National Industries, Inc.
 Appeals from the United States District Court for the Middle District of Florida.
 Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.
 GODBOLD, Chief Judge:
 
 
 1
 This is an action for negligence, breach of warranty and breach of contract. National Industries, Inc. is a manufacturer of bifold closet doors. Sharon Steel Corp. supplied National with galvanized cold rolled steel, which National made into doors that it then sold to two Puerto Rican distributors, Lausell Aluminum Jalousies, Inc. and Santurce Subcontracting. Customers of Lausell and Santurce complained that the paint on the doors peeled and flaked. The distributors notified National of the problem, but National was unable to correct it. By March 1982 Lausell had discontinued sales of National doors. Ultimately, both Lausell and Santurce ceased doing business with National, and National withdrew from the Puerto Rican market.
 
 
 2
 National brought this diversity action against Sharon, seeking to recover, inter alia, lost profits and damages for injury to reputation and goodwill. A jury found Sharon liable and awarded National $317,400, including $100,000 for lost profits for the year 1982, $50,000 for lost profits for 1983, and $100,000 for loss of goodwill and reputation in the Puerto Rican market. Sharon moved for a directed verdict, a judgment n.o.v., remittitur, and a new trial. The court granted the motion with respect to the award of $100,000 for loss of goodwill and reputation on the ground that it duplicated the award for lost profits or was speculative. The court denied the motions with respect to lost profits and denied a remittitur, leaving in effect a judgment for $271,400. Sharon appeals and National cross appeals.I. Lost Profits
 
 
 3
 Under Florida law, the applicable substantive law in this diversity case, "the loss of profit from the interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his actual loss was. Proof of the income and of the expenses of the business for a reasonable time anterior to the interruption charged, or facts of equivalent import, is usually required." New Amsterdam Cas. Co. v. Utility Battery Mfg. Co., 166 So. 856, 860 (Fla.1936). An "established business" is one that is "ongoing ... with an established sales record and a proven ability to realize profits at the established rate." Liza Danielle, Inc. v. Jamko, Inc., 408 So.2d 735, 739 (Fla.App. 3d Dist.1982), quoting Daytona MIGI v. Daytona Automotive Fiberglass, Inc., 388 So.2d 228, 232 (Fla.App. 5th Dist.1980). Damages for lost profits will not be allowed unless there is "some standard, such as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained." Twyman v. Roell, 166 So. 215, 217 (Fla.1936), quoted in A & P Bakery Supply v. Hawatmeh, 388 So.2d 1071, 1072 (Fla.App. 3d Dist.1980).
 
 
 4
 Sharon contends that National's foray into the Puerto Rican market was not an "established business" and that a determination that National was "established" is a necessary predicate to an award of lost profits. Although National's relationship with Lausell lasted not quite a year and was terminable by either party, National had been in the business of making bifold closet doors since 1962 and had been a factor in the Puerto Rican market since 1979. If under Florida law the issue whether a business is "established" calls for a legal determination by the court, we find no error. The fact that the court's order does not recite that determination is of no moment. See F.R.Civ.P. 52(a) (with exceptions not applicable here "conclusions of law are unnecessary on decisions of motions ..."). If, on the other hand, the issue is one of fact, there was sufficient evidence to take the issue to the jury. Cf. Liza Danielle, 408 So.2d at 739 (two year old business not new, but not "well-established," entitled to present evidence of lost future profits). Since Sharon did not request that the jury be instructed that before it could award lost profits it must find that National was "established," the adequacy of the charge is not before us. F.R.Civ.P. 51.
 
 
 5
 National's proof of lost profits was not legally deficient. National called two witnesses whose testimony went to this issue: Lester Pafford, National's comptroller, and Ernesto Reyes, president and general manager of Lausell, the distributor that terminated its relationship with National because of the paint defects. Pafford testified that National had earned a profit of $200,000 from sales to Lausell in 1981. Pafford calculated a per door margin of profit by deducting per door overhead from the per unit price, and derived a projected profit for the years 1982 and 1983 of $200,000 in each year. Pafford's projection rested upon an assumption that Lausell--the principal distributor of closet doors in Puerto Rico and National's major Puerto Rican distributor--would have demanded the same number of doors in 1982 and 1983 as it had in 1981. This assumption was bolstered by Reyes' testimony that Lausell's business remained steady over the period spanning these three years and that but for the peeling problem Lausell would have continued to distribute National door exclusively.
 
 
 6
 Sharon asserts that this testimony was insufficient to resist its motion for directed verdict because Lausell was not obligated to buy a specific number of doors from National in 1982 and 1983 and might have bought fewer than it had in 1981. An award of lost profits based on projected sales under a dealership contract terminable on 90-days notice was upheld in Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 415 So.2d 865 (Fla.App. 1st Dist.1982). See also, Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 366 So.2d 90 (Fla.App. 1st Dist.1979). That the relationship between National and Lausell was terminable by either party and did not fix the number of units per year to be bought and sold did not in itself require a directed verdict on the issue of lost profits.
 
 
 7
 A directed verdict was not required because National presented no evidence that it would have been able to pass along increased costs. Without such evidence, according to Sharon, National's assumption of a constant profit margin was without support. There was no evidence, however, that National's costs increased over the period in question. Moreover, Florida law does not require the plaintiff to show that it was entitled to a fixed price over the period for which lost profit damages are sought so long as there is data from which the anticipated profit can be reasonably ascertained. See R.A. Jones & Sons, Inc. v. Holman, 470 So.2d 60, 70 (Fla.App. 3d Dist.1985); Massey-Ferguson, 415 So.2d at 867; cf. Center Chemical Co. v. Avril, Inc., 392 F.2d 289 (5th Cir.1968) (uncertainty of price and quantity over executory 16-year term of contract made lost-profits award on sole evidence of plaintiff's accountant too speculative--remand ordered for new trial); Welbilt Corp. v. All State Distributing Co., 199 So.2d 127 (Fla.App. 3d Dist.1967) (lost profits disallowed where no showing of overhead or method for estimation of unit profit was made).
 
 
 8
 National can rely on its internally generated data and is not required to introduce what Sharon describes as "government or other authoritative figures" to show the condition of the Puerto Rican market. See, e.g., Massey-Ferguson, 415 So.2d at 867 (award based on plaintiff's financial statements and defendant's sales projections).
 
 
 9
 Considered as a whole these alleged shortcomings in National's proof did not require the issue of lost profits to be taken away from the jury. Florida law does not require exactitude where it is certain that substantial damage has been caused; a reasonable basis in the evidence for the computation will suffice. R.A. Jones & Sons, 470 So.2d at 70; Conner v. Atlas Aircraft Corp., 310 So.2d 352, 354 (Fla.App. 3d Dist.1975); accord National Papaya Co. v. Domain Indus., Inc., 592 F.2d 813, 818 (5th Cir.1979). We find such a reasonable basis here. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc) produces the same result. Sharon's motions for directed verdict and for judgment n.o.v. were properly denied.
 
 II. Judgment n.o.v. on damage to goodwill
 
 10
 National insists that the district court erred in granting Sharon's motion for judgment n.o.v. on the issue of injury to National's goodwill and reputation. A motion for directed verdict at the close of the evidence is a prerequisite to the granting of judgment n.o.v. See F.R.Civ.P. 50(b); see also, Wilson v. Attaway, 757 F.2d 1227, 1237 (11th Cir.1985). A motion for directed verdict should state specifically the grounds for the motion. F.R.Civ.P. 50(a). Sharon did move for a directed verdict at the end of National's presentation and at the end of all the evidence. National argues that these motions were insufficient in that they did not specify as grounds lack of evidence of injury to goodwill and reputation. We disagree.
 
 
 11
 At the end of National's presentation of evidence the following colloquy occurred:
 
 
 12
 THE COURT: All right. Let me hear your motion.
 
 
 13
 MR. COOK (Counsel for Sharon): Your Honor, at this time the defendants would move for a directed verdict, first as to the case in whole. The plaintiffs have not established their burden of proof in establishing [sic] both as to the liability aspects and the damage aspects of this case....
 
 
 14
 [An exchange ensued between THE COURT and MR. COOK concerning the significance of an alleged inconsistency in the testimony of National's experts as to the cause of the peeling problem]
 
 
 15
 THE COURT: Okay. Okay. Denied.
 
 
 16
 MR. COOK: Your Honor, the second is to direct a verdict as to the specific issue of future lost profits....
 
 
 17
 [MR. COOK then summarized Sharon's view of Florida law on recovery of lost future profits]
 
 
 18
 THE COURT: Any other motions?
 
 
 19
 MR. COOK: No, your honor, that's all at this time.
 
 
 20
 After the conclusion of the evidence, counsel for Sharon renewed his motion for directed verdict at the beginning of the charging conference. During the conference National requested a jury instruction on damages that listed lost profits for 1982 and 1983 and, separately, loss of goodwill and reputation in Puerto Rico:
 
 
 21
 THE COURT: Now, which elements do you want me to list?
 
 MR. KASTER (Counsel for National):
 
 22
 Everything except--I would like to list six, your honor, but you would not allow the testimony of Mr. Reyes [of Lausell] as far as our reputation and goodwill in Puerto Rico. I think that was my only evidence to the impact on reputation and goodwill and I would like to have that, I think, probably, under the circumstances. Not allowing that testimony in, there may be some question about that.
 
 
 23
 MR. COOK: I agree, your honor. That was the only testimony that was attempted and there was an objection and you ruled that evidence would be excluded, so there is no evidence of goodwill and loss of reputation and goodwill.
 
 
 24
 [MR. KASTER then suggested, and THE COURT agreed, that there was a basis in the Reyes testimony from which the jury could infer loss of goodwill and reputation]
 
 
 25
 MR. COOK: ... The evidence that you did exclude was the only evidence, and while there may be some--where--while the jury may be able to imply, you know, that there may have been reasons why there was no longer any business being done with them, I think that's incorporated not as a separate element of damages where you could have proved a particular cost. Like on an accounting statement, goodwill has a value. In this case that's included within the fact that if the Court allows them to consider the lost profit issue, lost profits would include that value ...
 
 
 26
 The court ultimately decided to give both an instruction on lost profits and on loss of goodwill and reputation. The court noted Sharon's objections to both instructions.
 
 
 27
 There is no question that Sharon moved for a directed verdict at the close of all the evidence; the issue is whether that motion encompassed damages for lost goodwill and reputation. Although loss of future profits and loss of goodwill and reputation may be legally distinct, the two are also closely related, for insofar as lost goodwill and reputation are compensable they are conceivable as a lost stream of future income. The difference here between the matters raised in the motion for judgment n.o.v. and the earlier motion for directed verdict is not so great as it is in Sulmeyer v. Coca Cola Co., 515 F.2d 835, 846 (5th Cir.1975) ("vertical territorial restrictions" in motion for j.n.o.v.; group boycotts and tying arrangements in motion for directed verdict--no objection to court's failure to instruct on vertical territorial restrictions) and Wilson v. Attaway, 757 F.2d at 1237 (motion for directed verdict as to jail conditions; motion for j.n.o.v. as to unconstitutionality of arrests).
 
 
 28
 Even if the subject matters of the two motions were much farther apart, we would not read Rule 50(b) so narrowly as National urges us to do. The reason for requiring a motion for directed verdict at the close of the evidence
 
 
 29
 is to avoid making a trap of the motion for judgment notwithstanding the verdict, either at the trial stage or on appeal. When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend his case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.
 
 
 30
 Quinn v. Southwest Wood Products, Inc., 597 F.2d 1018, 1025 (5th Cir.1979). Because the rule is a harsh one, we have taken a liberal view of what constitutes a motion for directed verdict. Id. at 1026. There is nothing in the record to suggest an ambush or sandbagging, and National can hardly complain that it was lulled into complacency regarding the sufficiency of its evidence of lost goodwill and reputation. See Splitt v. Deltona Corp., 662 F.2d 1142, 1143-45 (5th Cir.1981) (Unit B) (objection to jury charge on punitives sufficed as predicate to motion for j.n.o.v., even though earlier motion for directed verdict went only to fraud issue--"Since all parties had notice of the basis for [movant's] concern, Rule 50's purpose had been served."). Sharon was entitled to make a motion for judgment n.o.v. on the issue of lost goodwill and reputation.
 
 
 31
 In reviewing the disposition of Sharon's motion for judgment n.o.v. we apply the standard outlined in Boeing Co. v. Shipman, 411 F.2d at 374. Viewing the entire record in the light most favorable to National, we hold that there was not "substantial evidence ... of such quality and weight" that would permit an impartial juror to make a separate award for lost goodwill and reputation. The motion for judgment n.o.v. on this issue was properly granted.
 
 
 32
 AFFIRMED.