[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 09-11823 & 09-12286

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-22931-CV-TEB

AARON L. HOWARD, JR.,

Plaintiff-Appellee,

versus

WALGREEN CO.,
d.b.a. Walgreens Pharmacy,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 13, 2010)

Before PRYOR and FAY, Circuit Judges, and QUIST,* District Judge.

QUIST, District Judge:

---

  *  Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

Walgreen Co. ("Walgreens") appeals the magistrate judge's order denying its motion for judgment as a matter of law, Fed. R. Civ. P. 50(b), and its motion for a new trial, Fed. R. Civ. P. 59(a), following entry of judgment in favor of Aaron L. Howard, Jr. on his retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, et seq. Walgreens also appeals the magistrate judge's evidentiary rulings admitting evidence of post-termination actions by non-decision-makers. For the following reasons, we conclude that Walgreens is entitled to judgment as a matter of law and therefore reverse the magistrate judge's order denying Walgreens' Rule 50(b) motion.

## I. BACKGROUND

Howard, who is black, was employed as a pharmacist at Walgreens Store No. 4004 in Ft. Myers, Florida. After Walgreens terminated his employment in December 2004, Howard filed a complaint alleging that Walgreens discriminated against him based on his race with respect to the terms and conditions of his employment in violation of both Title VII and the FCRA. Howard further alleged that his termination was motivated by race discrimination and retaliation. Walgreens moved for summary judgment on all claims. The district court's rulings pared Howard's claims down to the discharge-based discrimination and retaliation claims. Thereafter,

the parties consented to a trial before a magistrate judge pursuant to 28 U.S.C. § 636(c).

The remaining claims were tried to a jury from March 31, 2008, through April 7, 2008. The evidence at trial established the following pertinent facts.[1]

Walgreens hired Howard as a full-time staff pharmacist in August 2003. Mark Collum, the District Pharmacy Supervisor for Walgreens' District 119, hired Howard and supervised him until September 2003, when Stephen Krzastek replaced Collum. Howard initially worked in various stores as a floater, but Krzastek later placed him in an overnight pharmacist position at Walgreens Store No. 4004. Overnight pharmacists typically worked a seventy-hour week, consisting of seven 10-hour shifts from 10:00 p.m. to 8:00 a.m., Monday through Sunday, with every other week off.

Howard's relationship with Krzastek was less than "cordial." On one occasion while visiting Walgreens Store No. 3099, where Howard was working at the time, Krzastek spoke to all the other pharmacy employees, who were white, but not to Howard, the only black employee present. In addition, Krzastek twice used the phrase "you people" toward Howard, once when referring to Howard's dirty lab coat

---

[1]Because this appeal is from an order denying a motion for judgment as a matter of law, we view all the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party, Howard. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212 n.1 (11th Cir. 2008); Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1177 (11th Cir. 2005), aff'd, 550 U.S. 618, 127 S. Ct. 2162 (2007).

3

and another time in connection with Howard's inquiry about the status of a raise. Howard found these comments offensive because a reference to "you people" is considered racially derogatory in the black community.

Howard was scheduled to work the week of December 6, 2004, although he was only to work for four days, through December 9, to accommodate a previously scheduled trip to Las Vegas with his fiancée. Howard worked on the 6th, but the following morning he felt ill with symptoms of a cold or the flu. Howard called Daneial Greenwell, the pharmacy scheduler for the district, to let her know that he was sick and would not be coming in to work that night, December 7. The next morning Howard felt even worse and again called Greenwell to notify her that he would not be at work that night nor likely the following night, December 9. In fact, Howard did not show up for work on the 9th. When Krzastek learned that Howard failed to report for work on the 9th and did not call in that day, he called Howard to discuss his concerns. Krzastek could not reach Howard, so he left a message stating that Howard's "job was in jeopardy" because he "pulled a No call/No show."

Because Howard was on vacation, he did not call Krzastek back until December 13. In the December 13 conversation, Howard told Krzastek that when he called Greenwell on the 8th, he told her not to count on him to work on the 9th. He asked Krzastek whether it made any sense that he would call in sick on the 7th and

4

8th but not the 9th. After Krzastek responded "no," Howard told Krzastek that he did not like the way Krzastek was threatening his job and discriminating against him and would let Krzastek's supervisors know about this conduct.[2] Krzastek replied, "who the hell do you think you are," and hung up.

Howard concluded his vacation and prepared to return for work on his next scheduled day, December 20, 2004. Before reporting to work, Howard delivered to Walgreens' management office a letter addressed to Walgreens' District Manager, Regional Manager, and Krzastek complaining of the way Krzastek had treated him. Howard's letter stated, in part:

> On Monday, December 13, 2004, a very disturbing and unprofessional message was left on my cell phone from the pharmacy supervisor, Steven [sic] Krzastek. The message that I received stated that my Walgreens pharmacy career was jeopardized due to the No Call/No Show.
>
> . . . .
>
> I do not fault Daniel [sic] Green for this misunderstanding. Because of her performance history with misscheduling I can understand her miscommunication of the message. What I can not [sic] understand is based on my work performance and attendance record why Steven [sic] Krzastek would leave such a threatening message pertaining to my job. Which leads [sic] me the only option to feel it was based on discrimination and I will not tolerate discrimination.

When Howard arrived at work that evening, he learned that Krzastek had terminated

---

[2]Walgreens defended on the theory that Howard quit his employment during the December 13 telephone call with Krzastek. Krzastek testified that during the conversation, Howard said that he was giving his two-week notice, to which Krzastek responded that notice was unnecessary.

him.

Walgreens moved for judgment as a matter of law both at the conclusion of Howard's case-in-chief and at the close of all the evidence, and the magistrate judge denied both motions. The jury returned a verdict against Howard on his race discrimination claim but found in his favor on the retaliation claim and awarded him $300,000 in damages. Following entry of the judgment, Walgreens filed a post-trial motion for judgment as a matter of law as well as a motion for new trial. The magistrate judge denied both motions.

Thereafter, Walgreens filed this timely appeal.

## II. STANDARD OF REVIEW

This court reviews a district court's denial of a motion for judgment as a matter of law *de novo*, viewing the evidence in the light most favorable to the non-moving party. D'Angelo v. Sch. Bd., 497 F.3d 1203, 1208 (11th Cir. 2007). The motion should be granted only "when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1278 (11th Cir. 2005) (citing Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004)).

## III. DISCUSSION

**A.**

Initially, we address Howard's argument that Walgreens is procedurally barred from asserting the three issues it raises on appeal in support of its motion for judgment as a matter of law. The first two focus on the protected conduct element of a retaliation claim, specifically, that: (1) Howard's bare allegation of "discrimination" without mention of race is too vague to be protected; and (2) Howard lacked an objectively reasonable belief that he was a victim of unlawful discrimination because Krzastek's threat in his message did not constitute adverse action. The third issue concerns the lack of a causal connection.

Although Walgreens raised all three issues in its Rule 50(b) motion, its Rule 50(a) motion attacked only the protected conduct element and did so on a different basis than those asserted here – that Howard's belief that the disagreement over the no call-no show was evidence of race discrimination was not objectively reasonable. Howard contends that Walgreens' failure to raise these issues in its Rule 50(a) motion precludes it from raising them on appeal. We disagree.

Pursuant to Rule 50(a)(2), a party moving for judgment as a matter law before the case is submitted to the jury must "specify . . . the law and facts that entitle the movant to judgment." Rule 50(b) permits the moving party to renew the motion post-judgment. Fed. R. Civ. P. 50(b). "This Court repeatedly has made clear that any

renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 903 (11th Cir. 2004) (citation omitted). The rule serves to protect a party's Seventh Amendment rights. Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1289 (11th Cir. 1998). As explained in National Industries, Inc. v. Sharon Steel Corp., 781 F.2d 1545 (11th Cir. 1986), the purpose of requiring the grounds asserted in a Rule 50(b) motion to align with those asserted in a Rule 50(a) motion

> is to avoid making a trap of the motion for judgment notwithstanding the verdict, either at the trial stage or on appeal. When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend the case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.

Id. at 1549 (quoting Quinn v. SW. Wood Prods., Inc., 597 F.2d 1018, 1025 (5th Cir. 1979)). Strict identity of issues, however, is not required. So long as they are "closely related," such that opposing counsel and the trial court may be deemed to have notice of the deficiencies asserted by the moving party, the purposes of the rule will be satisfied. Id. If "the new and old grounds vary greatly," we may not rely

8

upon the new grounds to reverse a district court's denial of a Rule 50(b) motion. Ross, 146 F.3d at 289. In that situation, the scope of review is limited to plain error. See Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc., 800 F.2d 1553, 1557 (11th Cir. 1986) (holding that when no motion for directed verdict is made, a Rule 50(b) motion can be granted only if plain error is shown).

While two of the grounds in Walgreens' later motion arguably are closely related to the grounds raised in the first, we need not decide the issue because we conclude that Howard forfeited his right to raise waiver on appeal by failing to raise it before the magistrate judge. All of our sister circuits confronted with the issue have held that when, as here, a party fails to raise the inadequacy of a Rule 50(a) motion in response to a Rule 50(b) motion, that party is precluded from raising the issue on appeal. See Graves v. City of Coeur D'Alene, 339 F.3d 828, 838-39 (9th Cir. 2003); Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc., 295 F.3d 1065, 1076 n.3 (10th Cir. 2002); Williams v. Runyon, 130 F.3d 568, 572 (3d Cir. 1997); Thompson & Wallace of Memphis, Inc. v. Falconwood Corp., 100 F.3d 429, 435 (5th Cir. 1996); Whelan v. Abell, 48 F.3d 1247, 1253 (D.C. Cir. 1995); Gibeau v. Nellis, 18 F.3d 107, 109 (2d Cir. 1994); Collins v. Illinois, 830 F.2d 692, 698 (7th Cir. 1987); Beauford v. Sisters of Mercy-Providence of Detroit, Inc., 816 F.2d 1104, 1108 n.3 (6th Cir. 1987); Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 293-95 (8th Cir. 1982). This

is a sensible rule.[3] A party claiming an improper Rule 50(b) motion should afford the district court the opportunity in the first instance to consider whether the grounds in the Rule 50(b) motion actually vary from those asserted in the Rule 50(a) motion and, if so, whether the moving party should be excused from strict enforcement of Rule 50(a)'s specificity requirement under the particular circumstances of the case. See Thompson & Wallace, 100 F.3d at 435 (requiring assertion of waiver before the district court allows that court to determine whether the offending party is excused from noncompliance and promotes judicial efficiency). Accordingly, we join these circuits and conclude that Howard waived his procedural challenge to Walgreens' motion.

**B.**

A plaintiff asserting a retaliation claim under Title VII must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action.[4] Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008). It

---

[3]Contrary to Howard's argument, Collado v. United Parcel Service, Co., 419 F.3d 1143 (11th Cir. 2005), does not preclude Walgreens from raising its Rule 50(b) issues on appeal because Collado did not address a party's waiver of the inadequacy of a Rule 50(a) motion by failing to raise the issue before the trial court in response to a Rule 50(b) motion.

[4]Because retaliation claims under the FCRA are substantively similar to Title VII retaliation claims, we use the same analysis for both claims. See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

is undisputed that Howard's termination constitutes an adverse action. Howard's claim fails as a matter of law, however, because he did not engage in protected conduct.

Title VII's anti-retaliation provision prohibits retaliation when an employee "oppos[es] any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Howard's claim is premised on the "opposition clause." Specifically, he contends that he was terminated after he complained of racial discrimination in his December 13, 2004, conversation with Krzastek and in his December 20, 2004, letter.

To establish statutorily protected conduct under Title VII's opposition clause, Howard must "show[] that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Little v. United Tech., Carrier Transicold Div., 103 F.3d 961, 960 (11th Cir. 1997). He must show both that he subjectively believed that Walgreens engaged in unlawful discrimination and that "his belief was *objectively* reasonable in light of the facts and record present." Id. (emphasis in original). Howard need not prove that the conduct he opposed was actually unlawful, id., but the reasonableness of his belief that Walgreens "engaged in an unlawful employment practice must be measured against existing substantive

11

law." Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999).

Even if Howard subjectively believed that Krzastek unlawfully discriminated against him when he left a message stating that Howard's job was in jeopardy, his belief could not have been objectively reasonable. A discrimination claim under Title VII requires an adverse employment action. Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1289 (11th Cir. 2003). Not all employer actions that negatively impact an employee qualify as "adverse employment actions." Davis v. Town of Lake Park, 245 F.3d 1232, 1238 (11th Cir. 2001). Rather, only those employment actions that result in "a *serious and material* change in the terms, conditions, or privileges of employment" will suffice. Id. at 1239 (emphasis in original). "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Id.

The only alleged discrimination about which Howard complained was Krzastek's message threatening that Howard's job was in jeopardy. An allegation such as this falls well short of an adverse action. Nowhere in the record is there any indication that the message resulted in a "serious and material change in the terms, conditions, or privileges of employment." Id. at 1239. In fact, nothing suggests, nor

does Howard argue, that at the time Krzastek left his message, he had taken any action – including termination, demotion, or even a reprimand – that could have seriously affected Howard's employment. Howard's belief thus was not objectively reasonable. Cf. Akins v. Fulton County, 420 F.3d 1293, 1301-02 (11th Cir. 2005) (holding in First Amendment retaliation case that unwarranted reprimands, a negative work evaluation, threat of job loss through dissolution of the plaintiffs' division, threat of suspension without pay, removal of job duties, and exclusion from meetings did not constitute adverse employment action, either singly or when considered in the aggregate). Consequently, his retaliation claim fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** magistrate judge's order and remand for entry of judgment in favor of Walgreens.