JULIE CARNES, Circuit Judge,
concurring in part and dissenting in part:
I join in all parts of the 'majority’s very thorough opinion in this case, with one exception: its holding that Homeward’s post-verdict Rule 50(b) motion for judgment as a matter of law (“JMOL”) did not constitute a renewal of its pre-verdict Rule 50(a) motion because the latter did not adequately identify the issue later asserted in the Rule 50(b) motion. Homeward argued in this Rule 50(b) motion that McGinnis had failed to prove a specific intent by Homeward to cause harm. Without proof of this specific intent to harm, McGinnis’s punitive damages were limited by statute to $250,000, meaning that the jury’s award of three million dollars in punitive damages would have to be reduced. Concluding that Homeward had adequately preserved this argument — and that the evidence failed to establish this element — the. district court granted Homeward’s Rule 50(b) motion for judgment as a matter of law. Because I agree with the district court that the issue now advanced by Homeward was cognizable in its Rule 50(b) motion, I respectfully dissent from the majority opinion’s holding to the contrary.
As the majority notes, a Rule 50(b) motion is considered to be a renewal of the party’s trial motion for judgment as a matter of law under Rule 50(a). A Rule 50(a) motion must be made before the case has been submitted to the jury, and on terms sufficient to alert the opposing party and the court of the ground for the motion. See Fed.R.Civ.P.' 50(a)(2). For that reason, a motion for judgment as a matter of law under Rule 50(b) can be viable only to the extent it renews an earlier trial motion. Otherwise, a sly movant, discerning a deficiency in his adversary’s presentation of the evidence, could lie in wait, purposely delaying his JMOL motion until after a verdict when it would then be too late for the adversary to correct what might have been a readily fixable omission. See Quinn v. Sw. Wood Prods., Inc., 597 F.2d 1018, 1025 (5th Cir.1979) (“When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend his case.”). Therefore, Rule 50(a)’s requirement that a movant make this, motion before the case is submitted to the jury operates to prevent the movant’s adversary from being . “ambushed” - or “sandbagged.” Id.
On the other hand, given the “harshness” of a determination that a Rule 50(a) motion was too imprecise to preserve a particular issue, “we have taken a liberal view”- of what constitutes a compliant motion. Nat’l Indus., Inc. v. Sharon Steel Corp., 781 F.2d 1545, 1549 (11th Cir.1986). In National Industries, the defendant sought the equivalent of a JMOL[1] during trial on the plaintiffs claim for loss of future -profits, but failed to mention in that motion a request for a JMOL on a claim for loss of goodwill and reputation. In its post-verdict JMOL motion, however, the defendant also sought judgment on the latter claim, and the district court granted the motion. Notwithstanding the defendant’s omission of any mention of the goodwill/reputation claim in its Rule 50(a) *1266 motion, we nonetheless held that its Rule 50(a) motion “encompassed” that claim because the two issues were “closely related.” Id. We also noted that “[ejven- if the subject matters of the two motions were much farther apart, we would not read Rule 50(b) . so narrowly — ” Id. Noting that the purpose of the requirement of a pre-verdict motion is to avoid ambushing the non-movant, we concluded that the plaintiff had not been “lulled into complacency regarding the sufficiency of its evidence” on the particular claim. Id.
Since National Industries, we have continued to characterize our approach to assessing the adequacy of a Rule 50(a) motion as being both liberal and flexible. See Sims’ Crane Serv., Inc. v. Ideal Steel Prods., Inc., 800 F.2d 1553, 1556-58 (11th Cir.1986) (acknowledging circuit precedent that adopts “a flexible approach” and “look[s] not to- the specific wording of the Rule 50(b) but toward its purpose,” which purpose is “ ‘to avoid making a trap’ of the motion for jnov - so that counsel is not ‘ambushed’ or ‘sandbagged’ regarding the sufficiency of the evidence he. adduced”); Rankin v. Evans, 133 F.3d 1425, 1432-33 (11th Cir.1998) (acknowledging the “liberal view” that our circuit has taken of what constitutes a motion- for directed verdict and citing with approval Scottish Heritable Trust, PLC v. Peat Marwick Main & Co., 81 F.3d 606, 610 (5th Cir.1996), which held that “[tjeehnical noneompliance with Rule 50(b) may be excused in situations in which the purposes of the rule are satisfied,” and Parkway Garage, Inc. v. .City of Philadelphia, 5 F.3d 685, 691 (3rd Cir.1993), which found compliant a JMOL motion that only implicitly raised the issue later advanced on the renewed JMOL motion, because the court and counsel had actual notice of the basis- of the motion); Etienne v. Inter-Cty. Sec. Corp., 173 F.3d 1372, 1374 (11th Cir.1999) (noting this circuit’s “liberal view of what a constitutes a motion for judgment as a matter of law” and holding that a party’s Rule 50(b) motion could be considered, even though the latter had not even made a Rule 50(a) motion, because counsel had made a statement at trial expressing his belief that the court should grant judgment on the ground underlying the subsequent Rule 50(b) motion).
In determining whether a ground identified in a Rule 50(b) motion has -been preserved via an earlier Rule 50(a) motion that failed to specifically identify or expound on the particular ground, we have held that' “[sjtrict identity of issues ... is not required...’.” So long as the issues identified in the earlier and later JMOL motions- “are ‘closely related,’ such that opposing counsel and the trial court may be deemed to have notice of the deficiencies asserted by the moving party, the purposes of the rule will be satisfied.” Howard v. Walgreen Co., 605 F.3d 1239, 1243 (11th Cir.2010) (quoting Sharon Steel, 781 F.2d at 1549). If, however, “the new and old grounds vary greatly,” the new ground will not provide a basis for granting a JMOL. Id.; accord Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1289 (11th Cir.1998).
Applying the above principles to the present case, I agree with the district court that Homeward’s motion for JMOL, based on the absence of evidence showing a specific intent to harm, did not cause McGinnis unfair surprise. Along those same lines, I further agree that Homeward’s arguments during the consolidated charge conference and Rule 50(a) colloquy were closely enough related to the ground it later articulated in support of its post-verdict motion to cap punitive damages.
As our caselaw explains, the purpose behind Rule 50’s requirement that a pre-verdict motion be made before a litigant can later seek a post-verdict judgment is *1267 to ensure that the opposing party is not lulled into a false assurance that he has presented a triable jury question. Allowing a putative movant to lie in wait, poised to ambush his adversary once the latter can do nothing to correct an overlooked omission in the evidence, is contrary to the goal behind Rule 50.
In this case, however, there is no indication that McGinnis had any additional evidence in her arsenal to prove what- she knew was the only factual question for the jury to decide in this second phase of the trial[2]: whether Homeward had acted with specific intent to harm. Indeed, even though Homeward’s counsel emphasized in his closing argument that McGinnis had failed to offer any evidence of a specific intent to harm, the response of McGinnis’s attorney in .his own subsequent closing argument was comparatively cursory and not entirely responsive. There is no reason to believe that there was some other piece of evidence that McGinnis had available to introduce if, in the jury charge/motion colloquy, Homeward had explicitly articulated its position that any punitive damages would be subject to a cap, given the absence of evidence of a specific intent to harm.
As to whether the grounds for JMOL urged by Homeward in both the pre-ver-dict colloquy and post-verdict written motion were related closely enough to alert McGinnis to the possibility of a claim of insufficient evidence concerning the specific-intent-to-harm element, it is- true that during the colloquy, Homeward mostly discussed McGinnis’s purported failure to prove that Homeward had been unreasonable in calculating escrow payment amounts and in ultimately foreclosing on her property after McGinnis continued to refuse to pay the amounts Homeward said it was owed. Thus, much of the colloquy-focused directly on the wrongful foreclosure claim. But the remaining claims were largely derivative of that claim. In fact, Homeward’s counsel asked for judgment on. the intentional infliction of emotional distress, claim, whose elements were, closely related to the question whether Homeward acted with the intent to harm McGinnis. Finally, at the end of the colloquy, Homeward’s counsel asked for JMOL “as to all claims.”
Yet,-even assuming that the above remarks were too subtle or imprecisé for purposes of preserving the argument at issue here, Homewárd’s counsel at- one point in the colloquy actually pointed out the- absence of evidence of specific intent, stating: “And just to be honesty there isn’t any evidence of specific intent in this case.” Granted counsel was not speaking about punitive damages, but was instead observing that McGinnis was trying to turn a wrongful foreclosure claim into an intentional tort warranting emotional distress damages. Nevertheless, counsel did make clear his position that evidence of specific intent was lacking in the case. Given that the only claim in the case calling for proof of “specific intent” was the claim for punitive damages exceeding $250,000, McGinnis should have immediately recognized that the evidentiary basis for that claim was likewise in play.
There is no bright-line rule in deciding a question such as the one before us in this case. Instead, one -must make a judgment *1268 call. Applying the liberal, flexible, and pragmatic standard that our Court uses to determine whether a Rule 50(a) motion has adequately preserved an issue for Rule 50(b) purposes, I conclude that McGinnis was necessarily aware that Homeward questioned the evidentiary sufficiency of her claim that Homeward had acted with the specific intent to harm. Further, however imprecise and inartful Homeward’s notice of this potential challenge may have been, it could not have mattered because McGinnis had no additional evidence to offer on this point. For these reasons, like the district court, I conclude that Homeward’s Rule 50(b) motion constituted a renewed JMOL motion, subject to consideration on its merits. I therefore respectfully dissent from the contrary holding of the majority opinion but concur in all other aspects of the opinion.

. Prior to 1991, Rule 50(a) used the term "motion for directed verdict,” instead of the present term "judgment as a matter of law,” and Rule 50(b) used the term-"judgment notwithstanding the verdict,” often shortened-to "jnov,” instead of the present term “renewed motion for judgment as a matter of law.” See Amendments to the Federal Rules of Civil Procedure, 134 F.R.D. 525, 679-82 (1991).

. , In the first phase of the trial, the jury determined liability and also decided whether McGinnis was entitled to punitive damages. Based on the instructions provided by the court as to that question, the jury decided that she was. In the second phase of the trial, the jury was directed to determine the actual amount of punitive damages and was told that it had to first find that Homeward acted with a specific intent to harm McGinnis before it could set damages any higher than $250,000.