[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11146

Non-Argument Calendar

_____

ADAM PAJER,

Plaintiff-Appellant,

*versus*

THE WALT DISNEY COMPANY, et al.,

Defendants,

DISNEY PARKS, EXPERIENCES AND PRODUCTS, INC.,
WALT DISNEY PARKS AND RESORTS U.S. INC,
REEDY CREEK IMPROVEMENT DISTRICT,

2                    Opinion of the Court                    24-11146

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00254-ACC-EJK

_____

_____

No. 24-11147

Non-Argument Calendar

_____

STEPHEN CRIBB,

Plaintiff-Appellant,

*versus*

THE WALT DISNEY COMPANY, et al.,

Defendants,

DISNEY PARKS, EXPERIENCES AND PRODUCTS, INC.,
DISNEY VACATION CLUB MANAGEMENT, LLC,

24-11146              Opinion of the Court                    3

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00250-ACC-EJK

_____

_____

No. 24-11148

Non-Argument Calendar

_____

STEVEN GIBBONS,

Plaintiff-Appellant,

*versus*

THE WALT DISNEY COMPANY, et al.,

Defendants,

DISNEY PARKS, EXPERIENCES AND PRODUCTS, INC.,
WALT DISNEY PARKS AND RESORTS U.S. INC,
REEDY CREEK IMPROVEMENT DISTRICT,

4                    Opinion of the Court                    24-11146

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00255-ACC-EJK

_____

_____

No. 24-11160

Non-Argument Calendar

_____

SETH SCHMIDT,

Plaintiff-Appellant,

*versus*

THE WALT DISNEY COMPANY, et al.,

Defendants,

DISNEY PARKS, EXPERIENCES AND PRODUCTS, INC.,
WALT DISNEY PARKS AND RESORTS U.S. INC,
REEDY CREEK IMPROVEMENT DISTRICT,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00257-ACC-EJK

_____

Before BRANCH, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Adam Pajer, Stephen Cribb, Steven Gibbons, and Seth Schmidt were each terminated by their respective Disney-affiliated employer after refusing to comply with Disney's COVID-19 protocols, which applied to unvaccinated employees. The employees alleged that their terminations violated multiple state and federal statutes. They sued Disney-affiliated and non-affiliated companies: Disney Parks, Experiences and Products, Inc., Walt Disney Parks and Resorts, U.S., Inc., and Disney Vacation Club Management, LLC (collectively referred hereinafter as "Disney"). The district court dismissed the employees' complaints for failure to state a claim upon which relief may be granted, and the employees appealed. After careful consideration of the record and the parties' arguments, we affirm.

## I.

During the COVID-19 pandemic, Disney adopted safety protocols requiring employees to wear masks and socially distance. In July 2021, Disney instituted a policy requiring employees to receive the COVID-19 vaccine. Later that year, on November 19, the Florida legislature passed a law forbidding non-public employer-enforced vaccine mandates, dubbed "vaccinate or terminate" policies. Disney responded to the new law by pausing enforcement of the vaccine mandate.

Although Disney stopped enforcing its mandate, Disney still required that employees report their vaccination status. Employees who failed to report their vaccination status were treated as unvaccinated. And Disney instituted additional "Augmented Health & Safety Protocols," which required unvaccinated employees to follow isolation, social distancing, and masking procedures. All four employees were treated as unvaccinated by Disney and required to follow the additional isolation, social distancing, and masking protocols.

The employees asked for a religious exemption from Disney's July 2021 vaccine mandate. But, after suspending the mandate in November 2021, Disney informed them that it would not evaluate pending requests for vaccine mandate exemptions. The employees' religious exemption requests were submitted between August and October 2021. No substantive response was obtained to any of the requests.

The employees objected to the Augmented Protocols in various forms. But the employees did not request any exemption from the Augmented Protocols. Ultimately, the employees were terminated for their unwillingness to comply with the Augmented Protocols.

The employees filed their respective complaints on February 14, 2023. In response, Disney moved to dismiss the employees' complaints under Federal Rule of Civil Procedure 12(b)(6) on March 27, 2023. The district court granted each motion to dismiss. Counts III-VII, the religious discrimination and retaliation claims, were dismissed without leave to amend. Counts VII-VIII, the ADA discrimination and retaliation claims, were dismissed with prejudice. Further, the court denied the employees' motion to amend the pleadings. The employees timely appealed.

## II.

We review a district court's order granting dismissal under Rule 12(b)(6) *de novo*. *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024). We "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1297 (11th Cir. 2024). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). We

review a district court's denial of leave to amend a complaint for an abuse of discretion. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

### III.

The employees present several claims in this appeal, against multiple Disney-affiliated entities, which they argue were improperly dismissed by the district court. Adam Pajer, Steven Gibbons, and Seth Schmidt assert their claims against Walt Disney Parks and Resorts, U.S., Inc. Stephen Cribb asserts his claims against Disney Vacations Club Management, LLC. All four employees assert their claims against Disney Parks, Experiences and Products, Inc.

First, the employees allege religious discrimination under both Title VII and Florida's Civil Rights Act. Second, the employees allege violations under the Americans with Disabilities Act. Third, the employees allege retaliation claims under Title VII, the FCRA, and the ADA. Lastly, the employees argue that the district court erred in its dismissal of their claims without leave to amend.

### A.

The employees first argue that Disney discriminated against them based on religion in violation of Title VII and the FCRA. Specifically, the employees challenge Disney's vaccine mandate and the Augmented Protocols under both a disparate treatment and disparate impact theory. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 786, 771-72 (2015).

24-11146                Opinion of the Court                9

We consider the Title VII and FCRA discrimination claims together because "the Florida act was patterned after Title VII" and both use the same analytical framework. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (holding that because the complaint failed to state a Title VII, it likewise failed to state a FCRA claim).

1.

We first address the disparate treatment claims. Title VII and the FCRA "prohibit employers from discriminating against their employees on the basis of religion." *Id.* (citing 42 U.S.C. § 2000e-2(a)(1)); *see* Fla. Stat. § 760.10(1)(a).

The employees present their disparate treatment claims under both a theory of traditional disparate treatment and a theory of reasonable accommodation. *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272 (11th Cir. 2021). We will address each theory in turn.

Under the traditional theory, a plaintiff must show that "(1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated 'similarly situated' employees outside his class more favorably." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (citation omitted). The employees argue that they sufficiently pleaded that they are "(1) Christians; (2) were subjected to inherently discriminatory masking and distancing policies . . . because of their religious beliefs and practices and were subsequently

terminated; (3) that employees who did not seek religious accommodations were treated more favorably; and (4) that the [employees] were qualified to perform their jobs." Further, the employees contend that the district court applied the *McDonnell Douglas* prima facie case too "rigidly" for the pleading stage.

We disagree that the employees pleaded a disparate treatment claim under the traditional theory. Nowhere in their complaints do the employees suggest that they were discriminated against for their religious beliefs. To be sure, the employees allege that they refused to verify their vaccination status for religious reasons and were, therefore, subject to the Augmented Protocols. But the Augmented Protocols applied to anyone who did not verify his or her vaccination status, including anyone who was not vaccinated or refused to verify for non-religious reasons. The Protocols are not an accommodation to a vaccination requirement because Florida law prevented Disney from requiring vaccination. *Compare Cole v. Group Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024) (complaint stated claim about the reasonableness of masking as a religious accommodation to a vaccination-or-termination requirement). The employees also allege that they requested a religious exception to the vaccine mandate. But the vaccine mandate was not enforced, and the employees fail to present any factual allegations that Disney treated them differently than others who did not request religious accommodations to the vaccine mandate.

The employees also fail to state a claim under the reasonable accommodation theory. Under that theory, a plaintiff must plead

that "(1) his sincere and bona fide religious belief conflicted with an employment requirement, and (2) his employer took adverse employment action against him because of his inability to comply with the employment requirement or because of the employer's perceived need for his reasonable accommodation." *Metro Ambulance*, 992 F.3d at 1275.

The employees failed to plead both elements of this claim. First, although the employees argue that "the Augmented Protocols were not reasonable accommodations for their refusal to get vaccinated," the vaccine mandate was not in effect when they were terminated. Disney ceased enforcement of the vaccine mandate following Florida's prohibition of "vaccinate or terminate" policies and then introduced the Augmented Protocols as a substitute. The employees needed an accommodation to the Augmented Protocols, not the vaccine mandate. Second, the employees have not stated a claim for reasonable accommodation as for the Augmented Protocols. The employees never alleged that their religious beliefs were at odds with the Protocols – only the vaccine mandate. Accordingly, the employees fail to plausibly plead the first element of a reasonable accommodation claim – that their religious beliefs ever conflicted with Disney's Augmented Protocols in the first place. *See Metro Ambulance*, 992 F.3d at 1275. And the employees never requested accommodations from the Protocols due to their religious beliefs. So they cannot fault Disney for failing to grant a request for an accommodation that they never requested.

To sum up, Disney required its unvaccinated employees to follow certain social distancing and masking guidelines. The employees here have identified no religious objection to those protocols, and they never requested a religious-based accommodation to those protocols. Accordingly, they cannot state a plausible disparate treatment claim.

2.

The employees also allege Title VII and FCRA religious discrimination in the form of disparate impact claims. To establish a prima facie disparate impact claim, a plaintiff must show (1) "a significant statistical disparity between the proportion of [members of a protected class] in the available labor pool and the proportion of [those individuals affected];" (2) "a specific, facially-neutral, employment practice which is the alleged cause of the disparity;" and (3) "that a causal nexus exists between the specific employment practice identified and the statistical disparity shown." *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000).

The employees argue that they alleged that (1) the vaccine mandate applied to all Disney cast members; (2) the employees requested accommodations from the mandate because of their religious beliefs; and (3) employees with religious beliefs "suffered adverse effects" by being subjected to the Augmented Protocols and terminated "for their inability to consent to the policies based on their [] beliefs." Further, the employees contend that they were not required to include statistics in their complaint and that it was

24-11146                 Opinion of the Court                 13

"enough to allege that a large proportion of those affected and subjected to the Augmented Protocols were Christian."

Even if we accept the employees' argument that their complaint need not contain statistics to state a claim for disparate impact, the complaints still do not plead a facially plausible disparate impact claim. Once again, the complaint alleges that the employees were subject to the Augmented Protocols because of their unvaccinated status. But the complaints are missing any factual allegation that employees with religious objections were more likely to be unvaccinated than anyone else such that they were disparately impacted by the Protocols. There are many reasons why one would forego vaccination, including preexisting medical conditions, a fear of needles, or non-religious health-related beliefs. With no factual allegations that would establish a religious-based disparity between those affected by the Protocols and those who are not affected, the complaints do not "raise a right to relief above the speculative level," and the employees fail to meet the pleading standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.

Next, we consider whether the employees properly stated a claim of discrimination under the Americans with Disabilities Act.

"To establish a prima facie case for disability discrimination, a plaintiff must produce sufficient evidence to permit a jury to find that [he]: (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of [his] disability." *Lewis v. Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019). The ADA defined

disability as (1) "a physical or mental impairment," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

The employees contend that they were discriminated against based on their perceived disability as an unvaccinated employee. The employees' argument proposes that their unvaccinated status was "regarded as" a disability by their Disney employers. What matters, the employees argue, is the employer's perception of the employee's alleged disability. The employees also contend that the "employer's perception need [not] . . . be accurate regarding disability." Further, the employees argue that the Augmented Protocols substituted the vaccine mandate as a "de facto mandate" policy. Because the Augmented Protocols allegedly employed portions of the 2020-2021 COVID-19 policies applied "solely to the symptomatically sick and testing-identified as infectious for Covid-19 or known to be exposed to the infection," the employees argue that Disney exhibited a perception that the employees were "currently diseased and dangerous on a permanent basis."

Our precedent forecloses the employees' argument that they were unlawfully regarded as having a disability because of their unvaccinated status. In *EEOC v. STME, LLC*, we were presented with a similar set of facts to those now before us. 938 F.3d 1305 (11th Cir. 2019). There, an employee was terminated because of the employer's concern that the employee would contract and later develop the Ebola disease while traveling abroad. *Id.* at 1311. We held that the employee could not have been "regarded as"

disabled under the ADA because the statute does not "extend to an employer's belief than an employee might contract or develop an impairment in the future." Even if we were to construe the definition of disability "in favor of broad coverage of individuals" as directed by the ADA, *see* 42 U.S.C. § 12102(4)(A), and suggested by the employees, we are bound to conclude "that the terms of the ADA protect anyone who experiences discrimination because of a current, past, or perceived disability – not a potential future disability." *STME, LLC*, 938 F.3d at 1316.

Here, the employees' unvaccinated status firmly suggests a potential future impairment. In fact, their allegations challenging the Augmented Protocols contradict the conclusory statements made that they were treated "as though [they] were a continually contagious vector of disease." The employees notably argue that that the Augmented Protocols imported portions of Disney's 2020-2021 COVID-19 protocols, which applied to those "symptomatically sick and testing-identified as infectious for Covid-19 or known to be exposed to the infection." The employees, however, also alleged that the same 2020-2021 masking and social distancing protocols applied to *all* employees, including those who were not known to be sick or exposed to COVID-19. In other words, those employees who were at risk of a future sickness. Those that presently felt sick or tested positive for the virus were to isolate at home *in addition* to continuing to wear facial covering and socially distancing once cleared to return to work. The Augmented Protocols' masking and social distancing guidelines for unvaccinated individuals more closely resemble Disney's previous COVID-19 protocols

relevant to employees not presently sick but who may be in the future. The employees' assertions that Disney regarded them as diseased and thus disabled find no support from our caselaw and fail to plausibly plead an ADA discrimination claim.

## C.

The employees next argue that their retaliation claims, arising out of their objection to Disney's allegedly unlawful practices under both federal and state law, were improperly dismissed by the district court.

First, the employees contend that the district court's order dismissing their Title VII and FCRA claims under Rule 12(b)(6) should be reversed. Due to the similarity between Title VII and FCRA retaliation claims, this Court uses the same analysis to address retaliation claims under both statutes. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 n.4 (11th Cir. 2010) (citing *Harper*, 139 F.3d at 1387).

Under Title VII, and by extension the FCRA, retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . under [Title VII]" is prohibited. 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Johnson v. Miami-Dade County*, 948 F.3d 1318, 1325 (11th Cir. 2020) (internal quotation marks omitted).

Most relevant to our analysis is the first element: establishing statutorily protected expression. To establish statutorily protected expression, "[the plaintiff] must show[] that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Howard*, 605 F.3d at 1244 (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)) (internal quotation marks omitted). "He must show both that he *subjectively* believed that [his employer] engaged in unlawful discrimination and that 'his belief was *objectively* reasonable in light of the facts and record present.'" *Id.* (emphasis added) (citation omitted).

The employees target the Augmented Protocols in their retaliation claims. They allege that their objection to the Protocols and to "threats of termination if they did not participate" is statutorily protected expression. The employees attempt to propel their argument by unconvincingly relying on the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). Whatever the employees' reason for the decision's mention, *Muldrow* does not apply here because it addressed a discrimination claim under Title VII and enunciated clear separation from the anti-retaliation provision. *See id.* at 976 (refusing to import a standard from Title VII's anti-retaliation provision into the Title VII anti-discrimination provision at issue).

In any case, the employees' argument that they possessed a *subjective* belief that the Augmented Protocols violated their religious rights under Title VII is critically weakened by the fact that

none of the employees alleged that they requested a religious exemption from the Protocols – only the vaccine mandate. By extension, because the employees are unable to present the required subjective belief, the employees' factual allegations cannot then point to the objective reasonability of a belief that is not there in the first place. Because the employees fail to show the necessary subjective belief and thus are unable to establish "statutorily protected expression," they fail to plead a Title VII or FCRA retaliation claim. *See Johnson*, 948 F.3d at 1325.

As for the ADA retaliation claim, the employees fail to properly present the issue in their appellate briefing. As we have long held, "an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Though the employees open their discussion of the retaliation claims by explicitly acknowledging both Title VII and the FCRA, the ADA is passively referenced within a single parenthetical. Without further expansion of the ADA retaliation claim, we are not convinced that the claim is adequately presented. Thus, the employees abandoned their ADA retaliation claim by improperly presenting it on appeal.

### D.

Lastly, we consider whether the district court abused its discretion by dismissing the employees' claims without leave to amend. The district court held that the employees improperly raised their request for leave to amend under Federal Rule of Civil

Procedure 15(a)(2) and had not made the requisite showing under Federal Rule of Civil Procedure 16(b). Because the employees failed to file a motion to amend their complaint by the deadline given to them and instead included the request for leave to amend in their opposition brief, the district court denied the request.

The employees argue that the district court should have granted leave to amend "in the interests of justice" as instructed by Rule 15. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). They contend that refusal "in the absence of a declared or apparent reason" is an abuse of discretion. *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307-08 (11th Cir. 1983). As for the deadline given to them by the district court, the employees suggest that a motion was not filed in time because "there was no guarantee that the district court would grant such a[] [motion] nor give leave to file amended pleadings."

Our binding precedent leaves the employees' arguments unconvincing. First, the district court correctly concluded that the employees improperly raised their request to amend under Federal Rule of Procedure 15(a)(2) by including it in their opposition briefing. *See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1236 (11th Cir. 2022) (citing *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018)). Second, by failing to file a motion for leave to amend by the deadline provided by the district court, the employees likewise did not properly request leave to amend. *See Advance Trust & Life Escrow Serv., LTA v. Protective Life*, 93 F.4th 1315, 1336-37 (11th Cir. 2024). And as required by Rule

16(b), the employees "did not indicate with any specificity the good cause [they] had for untimely moving to amend [their] complaint[s]." *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1367 (11th Cir. 2007). It cannot be said that the district court's refusal was an abuse of discretion when the employees "never filed a motion to amend," did not properly "request[] leave to amend before the district court," nor showed good cause for why they failed meet the court's deadline. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002); *see also Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

## IV.

We **AFFIRM** the district court's order.