[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-11335

————————————————

DEIRDRE BAKER,

Plaintiff-Appellant,

*versus*

JEA,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-00889-HES-PDB

————————————————

2                    Opinion of the Court                    22-11335

Before BRANCH and LUCK, Circuit Judges, and SMITH,[*] District Judge.

PER CURIAM:

Deirdre Baker, proceeding *pro se*, initiated this lawsuit alleging that her former employer, JEA (the Jacksonville Electric Authority), discriminated against her on the basis of her race. Baker, who is black, claimed that she was wrongfully terminated on account of her race and was retaliated against because of her complaints of racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a), 3(a). Following cross-motions for summary judgment, the district court entered judgment in favor of JEA. Baker—still proceeding *pro se*—appealed. After careful review, and with the benefit of oral argument, we affirm.

## I.    Background[1]

JEA, a water, and sewer utility company located in Jacksonville, Florida, employs both appointed and civil service employees.[2] Civil service employees are subject to the City of

---

[*] Honorable Rodney Smith, United States District Judge for the Southern District of Florida, sitting by designation.

[1] We review *de novo* a district court's rulings on cross-motions for summary judgment, and we view the facts in the light most favorable to the nonmoving party on each motion. *James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1251 (11th Cir. 2022).

[2] The City of Jacksonville Charter defines JEA as an "independent agenc[y]" of the City. Jacksonville, Fla., Charter § 18.07(d). The Florida legislature

22-11335                Opinion of the Court                3

Jacksonville's Civil Service Rules and Regulations and are entitled to certain employment protections, while appointed employees are essentially at-will employees who do not enjoy the same protections as civil service employees. Those appointed employees who previously served in civil service positions are permitted to revert to their civil service positions in lieu of termination in the event of performance issues. Baker held various civil service positions at JEA until she filled the appointed position of Financial Analyst Water/Wastewater ("W/WW") Operations in August 2015. In this new position, Baker was supervised by Melinda Ruiz-Adams, the Manager of Business Operations, who was in turn supervised by Carole Smith, the director of W/WW Asset Management and Performance.

In October 2018, JEA began its annual process of goal setting, requiring all employees, including Baker, to submit personal goals and objectives (also called "job factors") for the upcoming year. Those goals and objectives were used to set criteria by which the employees would be evaluated by their supervisors. Ruiz-Adams reviewed Baker's initial submission of her job factors

---

"created and established" the JEA by statute as a "body politic and corporate" to exercise "all powers with respect to electric, water, sewer, natural gas and such other utilities which are now, in future could be, or could have been but for this Article, exercised by the City of Jacksonville." *Id.* § 21.01 (citing statutes creating the JEA). Thus, JEA is a governmental entity created by the Florida legislature, and it acts primarily as the City's agent in providing utility services. We take judicial notice of the Charter and ordinances of the City of Jacksonville as they are "not subject to reasonable dispute." Fed. R. Evid. 201(b).

and determined that the goals Baker submitted were so easily achievable that they amounted to the bare minimum required under Baker's job description.  Accordingly, Ruiz-Adams rejected Baker's job factors and initiated a series of discussions regarding what acceptable goals and objectives would look like.  Ruiz-Adams also sent Baker a draft of acceptable job factors for Baker to use as a guide.  Baker, however, did not adjust her job factors properly and failed to comply with Ruiz-Adams's directions.

Baker then met with Robert Mack, the Director of Organizational Effectiveness and Payroll, to discuss the goal-setting process, but she still refused to input appropriate job factors following that meeting.  Eventually, Ruiz-Adams sent an email to Baker instructing her to submit the job factors provided by management and informing her that any refusal to do so would be considered insubordination.  Baker responded two days later and informed Ruiz-Adams that she refused to follow the instructions.

Throughout the goal-setting process and consultation with Ruiz-Adams, Baker made two complaints to JEA management.  First, during her initial meeting with Ruiz-Adams, Baker complained about an alleged pay disparity between herself and Ruth Remsen (a white employee who was paid more than Baker).  In response, JEA Human Resources conducted a formal job audit to determine whether Baker and Remsen were performing the same tasks and whether Baker was compensated according to the correct pay grade.  The results of the audit showed that, while Baker's assigned duties "overlap[ped]" with Remsen's, Remsen's

role had a "broader scope of duties" and "higher experience requirements."[3]  Ultimately, the audit results demonstrated that Baker did not perform the same tasks as Remsen and that Baker was properly compensated.

Meanwhile, Baker was placed on a Manager Support Program ("MSP"), which was a performance improvement plan giving her notice of unacceptable performance.  Under the MSP, if Baker did not "make the required changes, termination from employment [would] follow due to the serious nature and consequences of [her] non-compliance."

Second, approximately 11 days after lodging her first complaint, Baker filed a complaint with JEA's Labor Relations Department, alleging that Ruiz-Adams and Smith were discriminating against her and harassing her by not accepting her goals and objectives.  Baker presented information purportedly showing "ongoing attacks, threats[,] and bullying tactics" stemming from the goal-setting process.  After interviewing Baker, Ruiz-Adams, Smith, and another individual supervised by Ruiz-Adams, Labor Relations's "investigation revealed . . . no evidence to support a claim of bullying or discrimination," and offered Baker feedback that she "need[ed] to be more open to constructive criticism and work to establish effective and productive working relationships with peers and upper level management."

---

[3] At the time of the audit, Baker had 17 years' experience at JEA compared to Remsen's 30 years' experience.

Baker eventually entered her job factors as required by the MSP but, according to Smith, "the issues of [Baker's] insubordination and [her] challenging interactions with others continued." These issues culminated in Baker's dismissal in June 2019. A new vice president of W/WW had requested certain information (unrelated to Baker's job factors) be provided to him in a specifically formatted spreadsheet, and Baker was responsible for collecting and entering this information. However, according to Smith, Baker "refused to comply with the new directions from management," having been asked multiple times to ensure compliance with the spreadsheet and failing to do so "despite . . . counseling and direct instruction."

On June 7, 2019, several minutes before a meeting with the vice president, Smith approached Baker about the spreadsheet. According to Smith, Baker had been told "several times" that the spreadsheet she prepared was not properly formatted and that Baker was "continually challenging and difficult when asked to change how things were done or [how to] perform certain tasks." Baker, for her part, recounted her exchange with Smith somewhat differently. Baker testified that Smith was "close to [Baker's] face," told Baker that she wanted the specific spreadsheet, "flung the paper in [Baker's] face[,] . . . turned around, . . . slung her hair and . . . walked out." Following that meeting, Baker sent an email on June 18, 2019, to Smith, copying Human Resources and Labor Relations. She stated that she wished to address Smith's "abrupt and very abrasive visit to [Baker's] office," and expressed that she would not "be threatened, intimidated or harassed." She also

questioned why Smith acted with "hostility" despite Baker's work product "serv[ing] the purpose/person in which it was intended."

On June 27, 2019, Ruiz-Adams met with Baker and, because Baker's conduct and performance had not improved following the implementation of the MSP, Ruiz-Adams offered Baker the option of "revert[ing] back to her previous civil service position." She also informed Baker that if she chose not to revert, she would be terminated. The following day, Baker sent an email to the director of JEA's Labor Relations Department and Human Resources informing them that she chose not to revert and claiming that she had been harassed and retaliated against by Smith and Ruiz-Adams, alleging that they had "conspired and consulted against [her] with conflicting/contradicting directives to threaten [her] with insubordination." Baker was terminated several hours later.

Baker sued JEA on August 7, 2020, asserting causes of action for employment discrimination, retaliation, and hostile work environment under Title VII. She amended her complaint twice, filing the operative complaint on February 5, 2021. During discovery, on September 28, 2021, Baker filed a motion for summary judgment. In response, JEA then moved for summary judgment and responded to Baker's motion for summary judgment.[4] Following full briefing, the district court granted JEA's motion and denied Baker's.

---

[4] Before filing its motion for summary judgment, the magistrate judge granted JEA's motion for an extension of time to file a response to Baker's motion,

The district court first addressed Baker's race discrimination claim, which centered on her allegation that Remsen, a white employee, was paid more than Baker despite performing identical work. Using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the district court determined that Baker could not make a *prima facie* case of discrimination because Remsen was not an adequate comparator: Pursuant to the job audit conducted following Baker's claim of pay disparity, Remsen and Baker did not perform identical work and thus they were not similarly situated for purposes of Title VII. The district court noted that even if Baker had made out a *prima facie* case, she had not pointed to any record evidence that JEA's reasons for terminating her were pretextual.

With respect to Baker's retaliation claim, the district court concluded that it failed as a matter of law because the purportedly protected activities—Baker's two complaints of pay disparity and hostile work environment made in December 2018—were not temporally proximate to Baker's termination in June 2019. But "[e]ven if there were a connection between" those complaints and Baker's termination, the district court concluded that Baker's "intervening misconduct" "severed" that connection. The district court in a footnote also discussed Baker's complaint sent via email on June 28, 2019, (the same day as her termination), noting that by that point it was already determined Baker would be fired if she

---

over Baker's objection. Baker filed a motion for relief from the magistrate judge's order granting JEA an extension, which the magistrate judge denied.

chose not to revert and thus her termination "could not have [been] in retaliation for the complaint." But the district court did not discuss Baker's other complaints made in February 2019 or on June 18, 2019.

Lastly, regarding Baker's hostile work environment claim, the district court determined that the actions taken by JEA over a period of six months were not sufficiently severe or pervasive to constitute a hostile work environment.

Baker filed a motion for relief from the district court's summary judgment order, which the district court denied. Baker timely appealed.

## II.    Discussion

Baker raises three issues on appeal. First, she argues that the district court misapplied the burden-shifting standard set forth in *McDonnell Douglas*. Second, she argues that she established a *prima facie* case of a racially hostile work environment. Third, she argues that she established a *prima facie* case of retaliation.[5] We address each in turn.

---

[5] Baker also challenges several rulings granting JEA extensions of time by the magistrate judge during summary judgment briefing. However, we lack jurisdiction to review these rulings because Baker did not appeal them to the district court. *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980) (stating that "[a]ppeals from the magistrate's ruling must be to the district court," and that we lack jurisdiction to hear appeals "directly from federal magistrates"); *United States v. Schultz*, 565 F.3d 1353, 1359-62 (11th Cir. 2009) (applying *Renfro* where a magistrate judge issued an order on a non-dispositive issue, a party failed to object to the order, and the same party subsequently appealed from

### A. Race discrimination

First, Baker takes issue with the district court's application of the *McDonnell Douglas* framework in assessing her Title VII race discrimination claim. She contends that she was not required to satisfy that framework, but that, in any event, she did so by putting forth sufficient evidence to prove a Title VII violation. However, Baker has waived her challenge on this issue because she failed to raise it below in response to JEA's motion for summary judgment and, on appeal, she has failed to challenge the district court's determination that JEA put forth a non-pretextual reason for Baker's termination.

This Court reviews *de novo* a district court's grant of summary judgment. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Under Federal Rule of Civil Procedure 56(a), a district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether the movant has met this burden, courts must view all the evidence and make all reasonable inferences in favor of the nonmoving party. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

---

the final judgment). As for Baker's challenges to the district court's discovery extensions, a broad grant of authority is given to district courts in managing their dockets, especially with respect to pre-trial activities. *See, e.g.*, *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014). We see nothing that suggests the district court abused its discretion with these extensions.

Moreover, to obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince this Court that every stated ground for the judgment against her is incorrect. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). An appellant's failure to challenge one of the grounds on which the district court based its judgment deems the challenge abandoned on appeal, "and it follows that the judgment is due to be affirmed." *Id.* We may also decline to consider challenges that were not raised by an appellant in opposition to a motion for summary judgment to the district court below. *See, e.g.*, *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1274 (11th Cir. 2021) (declining to consider an appellant's Title VII disparate treatment claim because he did not raise it in his summary judgment briefing in the district court).

Title VII prohibits employers from discriminating against an employee "because of" her race. 42 U.S.C. § 2000e-2(a). Where a plaintiff relies upon circumstantial evidence to make out a Title VII discrimination claim, we utilize the burden-shifting framework established by the Supreme Court in *McDonnell Douglas*. *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012). Under that framework, the plaintiff bears the initial burden to establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To do so, "a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

"[A] plaintiff must show that she and her comparator[] are similarly situated in all material respects" for purposes of the fourth *McDonnell Douglas* step. *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (quotation omitted).

If a plaintiff establishes a *prima facie* case of discrimination, and the employer articulates a legitimate, nondiscriminatory reason for its action, the employee then bears the burden to show that the employer's reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802–04.

In opposition to JEA's motion for summary judgment, Baker did not challenge the application of the *McDonnell Douglas* burden-shifting framework, despite JEA's reliance upon it. Additionally, on appeal, Baker does not challenge another independent ground for the district court's summary judgment ruling: that she failed to put forth any evidence that JEA's justification for her termination was pretextual. Therefore, we conclude that Baker has waived her challenge to the district court's grant of summary judgment in favor of JEA on Baker's Title VII race discrimination claim and we thus affirm.

However, even if she did not waive her challenge, her claim for race discrimination would fail on the merits because Baker has not identified a valid comparator. Remsen, to whom Baker points as a possible comparator, worked at JEA for thirteen more years than Baker and had different duties than Baker (despite sharing some work responsibilities with Baker). Remsen is therefore not a

comparator for purposes of Baker's *prima facie* case of race discrimination.

### B. Hostile work environment

Baker argues that, contrary to the district court's conclusion, she established a *prima facie* case of a hostile work environment. She contends that she was subject to harassment and a hostile work environment from October 2018 through June 2019, that Ruiz-Adams provided her with "discriminatory job factors" during the goal-setting process, and that she experienced work interferences and "[w]ork related threat[s]." However, she does not make any specific argument that the district court erred in concluding that Baker failed to show that the purported harassment was sufficiently severe or pervasive or interfered with Baker's ability to perform her job.

Title VII prohibits employers from subjecting employees to harassment, or a hostile work environment. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations and citations omitted).

To make out a *prima facie* case of a hostile work environment based on racial harassment, the plaintiff must establish that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently

"severe or pervasive" to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis exists for holding the employer liable. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304–05 (11th Cir. 2016).

The "severe or pervasive" requirement "contains both an objective and a subjective component." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). In evaluating the objective severity of the harassment, a court considers, among other things, the severity of the conduct and whether it unreasonably interfered with the employee's job performance. *Id.* Isolated incidents that are not extremely serious are not sufficiently severe or pervasive. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1303–04 (11th Cir. 2012) (finding that seven racist acts over the course of one year was sufficient to preclude summary judgment); *but see McCann v. Tillman*, 526 F.3d 1370, 1378–79 (11th Cir. 2008) (finding that instances of racially derogatory language over a period of more than two years were too isolated to be "severe or pervasive").

*Pro se* filings are held to a less stringent standard than those drafted by attorneys and are liberally construed. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1319 n.16 (11th Cir. 2017). However, where a *pro se* litigant fails to raise a legal claim on appeal, she abandons that claim, and we will not review it. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Where an appellant makes only passing reference to an issue or raises it in a perfunctory manner, without providing supporting arguments or authority, that claim

is considered abandoned and need not be addressed on appeal. *Sapuppo*, 739 F.3d at 681.

Here, the district court held that Baker had not demonstrated that the purported hostile actions—"which occurred over [the course of] more than six months"—were severe or pervasive, nor did she demonstrate that the actions interfered with her ability to do her job. Baker, however, makes no argument addressing the specific holding below and has thus abandoned any challenge thereof on appeal. *Id.* And even if she had not abandoned this challenge, it would fail on the merits. JEA's conduct by and through its employees occurred over a period of six months and consisted largely of supervisors' and management's attempts to urge Baker to fulfill her employment obligations. Baker has not pointed to any instance of harassment or hostile action—much less a cumulation of instances to create a hostile work environment—by any individual at JEA that unreasonably interfered with Baker's ability to do her job; much less any action that was motivated by her race in any way whatsoever. We therefore affirm the district court's grant of summary judgment to JEA on Baker's hostile work environment claim.

### C. Retaliation

Lastly, Baker argues that she has established a *prima facie* case of retaliation, faulting the district court for acknowledging only two of eight instances in which Baker claims she engaged in a protected activity that was followed by purported adverse action. Specifically, Baker lists the following instances of protected

expression: (1) she made a complaint of racial pay disparity in October 2018; (2) she discussed her job factors and her compensation complaint with an unspecified individual in December 2018; (3) she made a complaint to the Director of Organizational Effectiveness and Payroll regarding her goals and objectives in December 2018; (4) she made a harassment complaint in December 2018; (5) she made a formal complaint in December 2018 to the Equal Employment Opportunity Commission; (6) she made a compensation complaint and a complaint regarding her MSP in February 2019; (7) she made a hostile work environment complaint to human resources and management in June 2019; and (8) she made a workplace retaliation complaint to senior management in June 2019, hours before her termination.

The district court focused on the purportedly protected activities in which Baker engaged in December 2018, but Baker argues that the district court should have also considered the activities from June 2019. Specifically, Baker argues that her complaint on June 18, 2019, via email to an allegedly harassing supervisor constituted protected expression and her demotion ten days later constituted retaliation.

Title VII prohibits an employer from retaliating against an employee for, *inter alia*, opposing "any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, a plaintiff may show that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) she established a causal link between the protected

activity and the adverse action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010).

To establish statutorily protected conduct, a plaintiff must show that she had a reasonable, good-faith belief that her employer was engaged in unlawful employment practices. *Id.* The plaintiff must prove that she subjectively held such a belief and that the belief was objectively reasonable in light of the circumstances. *Id.* A grievance alleging unfair treatment, absent any indication of discrimination based on the plaintiff's protected status, is not protected under Title VII. *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

As for the materially adverse action prong, warnings that a plaintiff's job is in jeopardy do not constitute materially adverse actions. *Howard*, 605 F.3d at 1245.

With respect to causation, a plaintiff must show that the protected activity and the adverse employment action are not completely unrelated. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). "Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection," so long as the proximity is very close. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quotation omitted); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). For instance, a three-to-four-month "disparity between the statutorily protected [action] and the adverse employment action is not enough."

*Thomas*, 506 F.3d at 1364.  Absent "other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  *Id.*

In a retaliation case, when an employer contemplates taking a materially adverse action before an employee engages in protected activity, "temporal proximity between the protected activity and the subsequent adverse . . . action does not suffice to show causation."  *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).  Moreover, superseding, intervening acts may be sufficient to break a causal chain.  *See, e.g.*, *Whatley v. Metro. Atlanta Rapid Transit Auth.*, 632 F.2d 1325, 1329 (5th Cir. 1980) (noting that "a culmination of problems growing out of appellant's manner of handling his job, his lack of cooperation within his office, his mismanagement of his staff, his refusal to comply with the terms of his job description, and his refusal to follow instructions from his supervisor" were sufficient to break the causal chain between protected activity and adverse action).[6]    Finally, the employee must ultimately prove that "the desire to retaliate" was the "but-for" cause of a challenged action.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

The district court did not err in granting summary judgment to JEA on Baker's retaliation claim because Baker has not

---

[6] All published cases of the former Fifth Circuit decided before the close of business on September 30, 1981, are precedent in this Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

established a *prima facie* case of retaliation.  First, assuming that her complaints in December 2018 are protected activity, they are not temporally proximate to her termination in June 2019.  As for her complaint in February 2019, the time between February and termination in June 2019 is likewise not temporally proximate to her termination.  *Thomas*, 506 F.3d at 1364 (explaining that our caselaw requires a "very close" temporal relationship between protected activity and adverse action and that a three-to-four-month "disparity between the statutorily protected [action] and the adverse employment action is not enough").

With respect to her complaint made on June 18, 2019, in which Baker expressed that she felt "threatened, intimidated, and harassed" following her encounter with Smith, even assuming that this email constitutes protected conduct, there is nothing in the email that ties Baker's complaints of harassment or intimidation to her race.  Rather, JEA has provided a legitimate, nondiscriminatory reason for terminating Baker and Baker has done nothing to demonstrate pretext.  Lastly, as to Baker's complaint made on June 28, 2019 (the same day as her termination), we agree with the district court that because JEA had already determined that Baker would be terminated if she chose not to revert, Baker's termination could not have been in retaliation for that email.  *See e.g.*, *Alvarez*, 610 F.3d at 1270 ("Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint.").  We therefore affirm the district

court's grant of summary judgment to JEA on Baker's retaliation claim.

### III.    Conclusion

Because Baker has waived her challenge to the application of the *McDonnell Douglas* framework and to the district court's conclusions regarding pretext, JEA is entitled to summary judgment on Baker's race discrimination claim.  Even if Baker did not abandon her challenge to the district court's grant of summary judgment to JEA on her hostile work environment claim—which we conclude that she did—her hostile work environment claim would still fail on the merits.  Lastly, because Baker cannot establish a *prima facie* case of retaliation, JEA is entitled to summary judgment on that claim as well.

**AFFIRMED.**