United States Court of Appeals,

Eleventh Circuit.

No. 95-8425.

Bryan LITTLE, Plaintiff-Appellant,

v.

UNITED TECHNOLOGIES, CARRIER TRANSICOLD DIVISION, Defendant,

Carrier Corporation, Defendant-Appellee.

Jan. 22, 1997.

Appeal from the United States District Court for the Middle District of Georgia. (No. CA93-41-14th(DF)), Duross Fitzpatrick, Chief Judge.

Before BIRCH, Circuit Judge, KRAVITCH, Senior Circuit Judge, and SCHWARZER[*], Senior District Judge.

BIRCH, Circuit Judge:

This appeal raises an issue of first impression in this circuit regarding a provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), making it unlawful for an employer to retaliate against an employee for opposing a violation of Title VII: Is an employer's alleged retaliation against an employee for opposing an offensive or derogatory remark uttered by a co-worker actionable under Title VII? The district court granted summary judgment in favor of the employer on all claims. For the reasons that follow, we affirm.

## I. BACKGROUND

Plaintiff-appellant, Bryan Little, is a white male who has worked for the defendant-appellee, Carrier Corporation ("Carrier") since 1987. In August, 1991, Little was assigned to work in

---

[*]Honorable William W. Schwarzer, Senior U.S. District Judge for the Northern District of California, sitting by designation.

Carrier's Test Department. Willie Wilmot, also a white employee, worked in the Quality Assurance Department. According to Little, several weeks after he began working in the Test Department, Wilmot approached him and stated: "Nobody runs this team but a bunch of niggers and I'm going to get rid of them." R1-28, Exh. F. Although Little apparently informed several co-workers about Wilmot's racially derogatory comment, he did not report the remark to either a supervisor or manager until approximately eight months later. In May, 1992, Little communicated the racial slur at a team meeting at which Wilmot was present. According to Little, the purpose of the meeting was to discuss Wilmot's continued membership on the team and, from Little's perspective, provided the appropriate forum to convey to other team members the statement Wilmot had made.

Following the meeting, Little's supervisor, Don Pursley, gave Little a "Record of Conversation" containing, in part, the following statement:

> Repeating any racial slur is derogatory and offensive to some people. The use of such remarks whether said by another or not should not be used because it can cause friction between some members within a team. This may result in the team not being able to function in a team environment.

R1-28, Exh. D. Wilmot also received a similar document informing him that regardless of whether he had made the comment that gave rise to Little's accusation, Carrier would not tolerate racially offensive speech. Little contends that he was harassed continually from this point forward in retaliation for having complained about Wilmot's conduct. Specifically, he alleges that he was under constant surveillance from his supervisors, subjected to closer

scrutiny and criticism, and occasionally given menial tasks to perform.[1]

In his amended complaint, Little alleged that Carrier had discriminated against him because of his opposition to the tolerance of racial slurs at the company, in violation of Title VII, the Civil Rights Act of 1991, and 42 U.S.C. § 1981. The district court granted summary judgment in favor of Carrier after finding that Little had failed to establish a prima facie case of discrimination. In reaching this conclusion, the court determined that (1) one isolated comment does not constitute an unlawful employment practice, and (2) Little had not been subjected to an adverse employment action within the meaning of Title VII.

## II. DISCUSSION

We review *de novo* the district court's order granting summary judgment. *Jameson v. Arrow,* 75 F.3d 1528, 1531 (11th Cir.1996). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, we must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v.*

---

[1]In his complaint, Little also stated that he attended and spoke at a picnic in August, 1992, held to discuss the treatment of black employees at Carrier. Little alleged that Carrier further retaliated against him for his participation in that meeting by denying him a promotion. The denial of the promotion, however, is not argued as part of this appeal.

*Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

A. Title VII

Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). As with a discriminatory treatment claim, a plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities. *Coutu v. Martin County Bd. of County Com'rs,* 47 F.3d 1068, 1074 (11th Cir.1995) (per curiam).

Having reviewed the record, we conclude that Little has failed to establish the first element of his prima facie case alleging retaliatory discrimination; that is, he has failed to show that he engaged in a statutorily protected activity. We note, at the outset, that only the Ninth Circuit has addressed the question at issue before us: Whether the expression of opposition to a single comment by one co-worker to another can constitute opposition to an unlawful employment practice as a matter of law. In *Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir.1978), the plaintiff objected to a racially derogatory remark uttered by a co-worker, demanded and received an apology from the same co-worker, and subsequently was

fired. In finding that the plaintiff had failed to establish a prima facie case of retaliatory discharge under Title VII, the Ninth Circuit resolved that the opposition of an employee to a co-worker's own individual act of discrimination "does not fall within the protection of [Title VII]." *Id.* at 142.

We agree with the Ninth Circuit's disposition of *Silver,* a case factually similar to the one at hand. As stated by that court,

> [b]y the terms of the statute ... not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual.

*Id.* at 141. We previously have held that in order to hold an employer responsible under Title VII for a hostile environment created by a supervisor or co-worker, a plaintiff must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Splunge v. Shoney's, Inc.,* 97 F.3d 488, 490 (11th Cir.1996). *See also Silver,* 586 F.2d at 142 ("Even a continuing course of racial harassment by a co-employee cannot be imputed to the employer unless the latter both knows of it and fails to take remedial action.") Here, Little's opposition to the racial remark uttered by Wilmot, a co-worker, is protected conduct within the parameters of the statute only if Wilmot's conduct can be attributed to Carrier. Based on the facts of this case, we conclude that Wilmot's racially offensive comment alone is not attributable to Carrier and, accordingly, Little's opposition to the remark did not constitute opposition to an unlawful employment practice.

Little argues that even if Wilmot's comment, either in fact or in law, does not constitute an unlawful employment practice, he nonetheless can make out a prima facie case by showing that he reasonably believed that he was opposing a violation of Title VII by his employer. We previously have recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement,* 868 F.2d 397, 400 (11th Cir.1989). It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

A plaintiff, therefore, need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a prima facie case and overcome a motion for summary judgment; such a requirement "[w]ould not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances." *Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir.1978). *See also*

*Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982) ("To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of [Title VII] if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices.")[2]

In light of the facts of this case, however, we find Little's assertion that he reasonably believed Wilmot's comment to be a violation of Title VII by Carrier to be implausible at best. As noted above, Little never voiced his concern over Wilmot to a supervisor or management-level employee at Carrier and reported the comment for the first time in a team meeting held approximately eight months after the remark was made. The record indicates that no rational jury could find Little's belief that his opposition to Wilmot's racist remark constituted opposition to an unlawful employment practice to be objectively reasonable. As a result, although we acknowledge that a plaintiff conceivably could prevail on his retaliation claim notwithstanding the fact that the practice he opposed was not unlawful under Title VII, such a circumstance is not presented in this case. We conclude not only that Little's opposition to Wilmot's racially derogatory comment did not constitute opposition to an unlawful employment practice as a

---

[2]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981).

matter of law, but also that, based on the particularized facts of this case, Little did not have an objectively reasonable belief that he was opposing an unlawful employment practice.

B. 42 U.S.C. § 1981

In the complaint, Little alleged that the same facts that formed the basis of his Title VII retaliation claim also gave rise to a violation of 42 U.S.C. § 1981. That statutory provision states, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, liens, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In its order, the district court did not conduct a separate analysis of Little's Title VII and section 1981 claims and, in granting summary judgment in favor of Carrier, applied the same principles regarding the requisite elements of a prima facie case to both causes of action. Similarly, Little makes no legal distinction on appeal between his Title VII and section 1981 claims. It is worth noting, however, that Title VII's prohibition against retaliation for opposition to conduct reasonably believed to be violative of Title VII is not identical to the kind of discrimination proscribed by section 1981. It is well-established that section 1981 is concerned with *racial* discrimination in the making and enforcement of contracts. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 436, 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968) ("In

light of the concerns that led Congress to adopt it and the contents of the debates that preceded its passage, it is clear that the Act was designed to do just what its terms suggest: to prohibit all racial discrimination, whether or not under color of law....").

Here, there is no evidence in the record—and Little does not suggest or allege—that the discrimination or retaliation allegedly levelled against him was due to his race; that is, Little does not contend that Carrier discriminated against him because he was white. Both the facts and legal framework of Little's action are grounded solely in the opposition clause of Title VII and are unrelated to the concerns explicitly set forth in the language of section 1981. Although we decide this issue based on reasoning not expressed by the district court, *see Church of Scientology v. Cazares,* 638 F.2d 1272, 1281 (5th Cir. Mar. 1981), we are convinced that the court properly determined that Little failed to establish a prima facie case with respect to his section 1981 claim.

### III. CONCLUSION

In this appeal, Little contends that the district court erred in finding that he failed to establish a prima facie case of retaliatory conduct under Title VII and 42 U.S.C. § 1981 and granting summary judgment in favor of Carrier. We conclude that a racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice under the opposition clause of Title VII, 42 U.S.C. § 2000e-3(a), and opposition to such a remark, consequently, is not statutorily protected conduct. We further resolve that, based on the record in this case, Little did

not have an objectively reasonable belief that he opposed an unlawful employment practice and, therefore, failed to set forth a prima facie case under Title VII. Finally, with respect to Little's cause of action under 42 U.S.C. § 1981, we conclude that he failed to allege that the discrimination at issue was related to his race. Accordingly, we AFFIRM.