[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11597
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-00926-CDL-TFM

SHAWN BELL,

Plaintiff - Appellant,

versus

CITY OF AUBURN, ALABAMA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 12, 2018)

Before TJOFLAT, MARCUS and NEWSOM, Circuit Judges.

PER CURIAM:

Shawn Bell, an African-American male, appeals from the district court's

grant of the defendant's motion for summary judgment in his employment

discrimination action brought pursuant to 42 U.S.C. § 1981, which alleged that the

City of Auburn, Alabama ("the City") fired him in retaliation for reporting race discrimination. On appeal, Bell argues that: (1) the district court abused its discretion by disregarding a sworn declaration he submitted in opposition to summary judgment; and (2) the district court erred in determining that he could not make a prima facie case of retaliation. After thorough review, we affirm.

We review a district court's decision to strike an affidavit as a "sham" for abuse of discretion, which means that it "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1306 (11th Cir. 2016). We review a district court's grant of summary judgment de novo. Id. at 1303. A grant of summary judgment will be affirmed if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, we "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Furcron, 843 F.3d at 1304.

First, we are unpersuaded by Bell's claim that the district court abused its discretion by disregarding a sworn declaration he proffered to oppose summary judgment. In limited circumstances, a district court can disregard an affidavit as a matter of law when, without explanation, it flatly contradicts the affiant's own prior deposition testimony for the transparent purpose of creating a genuine issue

of fact where none existed previously. Id. at 1306. For an affidavit to be disregarded as a sham, a party must have given clear answers to unambiguous questions that negated the existence of any genuine issue of material fact. Van T. Junkins & Assocs. v. U.S. Indus., 736 F.2d 656, 657 (11th Cir. 1984). We've noted that "[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986) (reversing a sham affidavit ruling where discrepancies in an affiant's testimony affected his credibility and persuasiveness, but were not so inherently inconsistent that his affidavit had to be disregarded as a matter of law).

Here, the district court did not abuse its discretion by disregarding portions of Bell's sworn declaration as a "sham." As background, Bell's complaint alleged that he had been employed as a recycling collector for the City, but the City had terminated him in retaliation for complaining to the City's human resources department ("HR") that his supervisor, Oscar Gilmore, had called him "boy." Later, in a deposition, when Bell testified that he felt discriminated against by Gilmore's comment, he explained that he meant the comment discredited his manhood, that he was a man, that he did not think a man should talk to another man like that, and that he did not like the way that Gilmore had spoken to him. Bell never testified in his deposition that he believed Gilmore made the comment

3

because of his race, or that he was complaining of racial discrimination when he went to HR. In fact, during the deposition, the City directly asked Bell if he believed that Gilmore was "being racial" when he called him "boy," and Bell replied "[n]o." After the deposition, however, Bell submitted a sworn declaration, in which he averred that he believed that Gilmore's "boy" comment was "racially discriminatory and degrading," and that he complained to HR specifically of racial discrimination on that basis. Bell said that he would not have complained if he had not honestly believed the comment to be racially discriminatory.

As the record reveals, the statement in Bell's sworn declaration that he understood Gilmore's comment to be racially discriminatory and that he was complaining of racial discrimination when he went to HR directly contradicted the clear answer he gave to an unambiguous question in his deposition that he did not believe Gilmore was "being racial." See Van T. Junkins, 736 F.2d at 657. The explicitness of this contradiction created an inherent inconsistency with Bell's prior testimony, and amounted to a transparent effort to create a genuine issue of fact, affecting more than his credibility or persuasiveness. See Tippens, 805 F.2d at 953. Further, we cannot say Bell was merely defining discrimination because he had already defined what he meant by discrimination in his deposition testimony -- that the comment discredited his manhood. See id. Thus, the district court did not

4

abuse its discretion when it disregarded the unexplained and contradictory parts of Bell's declaration.  See Furcron, 843 F.3d at 1306.

We also find no merit to Bell's claim that the district court erred in determining that he could not make a prima facie case of retaliation.  The Civil Rights Act of 1866 guarantees to all persons the same right "to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981.  In an employment context, § 1981 protects against discrimination on the basis of race. Johnson v. Ry. Express Agency, 421 U.S. 454, 459-60 (1975).  Retaliation claims, including employment-related retaliation claims, are cognizable under § 1981, despite the fact that the statute contains no explicit retaliation provision.  CBOCS West, Inc. v. Humphries, 553 U.S. 442, 452-57 (2008).

The same requirements of proof apply to 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e-3(a), and both use the same analytical framework.  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Thus, to establish a prima facie case of retaliation, a plaintiff may show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the materially adverse action.  Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993); see also Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68-69 (2006).  To meet the first prong -- statutorily-protected activity -- a plaintiff must show that

he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices, which, in the § 1981 context, must be racial discrimination. Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011); Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 961 (11th Cir. 1997). So, to constitute protected activity under § 1981, a plaintiff would be required, in part, to subjectively believe that the unlawful employment practice complained of was racial discrimination. See Furcron, 843 F.3d at 1311; Little, 103 F.3d at 961. As for the third prong -- a causal connection between protected activity and a materially adverse action -- "[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999) (quotation omitted). While close temporal proximity between the protected activity and the adverse action is circumstantial evidence that may be sufficient to show that the two were not wholly unrelated, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (Family and Medical Leave Act ("FMLA") retaliation context); Clover, 176 F.3d at 1354.

Here, for Bell to establish protected activity for a § 1981 violation, he was required to show that he subjectively believed that he was reporting that the City engaged in racial discrimination when he complained to HR that his supervisor had called him "boy."  See 42 U.S.C. § 1981; Furcron, 843 F.3d at 1311; Little, 103 F.3d at 961.  However, as we've already detailed, Bell cannot do so -- he testified in his deposition that he believed Gilmore's "boy" comment was discriminatory because it discredited his manhood, and when explicitly asked if he believed that Gilmore was "being racial" when he called him "boy," and he replied "[n]o."  Bell also complained in his deposition about being denied overtime.  But again, Bell cannot identify any evidence in the record that he believed he was denied overtime on account of his race, or that he reported that he was being denied overtime on account of his race.  See Furcron, 843 F.3d at 1311; Little, 103 F.3d at 961.  At no point in his deposition or in his sworn declaration did he say that the City denied him overtime on account of his race; rather, he said he had complained that overtime was only being given to individuals with certain kinds of commercial drivers' licenses.  On this record, the district court properly found that Bell did not engage in statutorily protected activity.  See Goldsmith, 996 F.2d at 1163.

The district court also correctly held that Bell had not established that any protected activity was causally connected to his termination -- the third element of a prima facie case of retaliation.  Here, Tim Woody, the environmental services

director, testified in his deposition and stated in his affidavit that he was unaware that Bell had complained to HR of race discrimination at the time he decided to terminate him.    Whatever temporal proximity there was between Bell's HR complaint and his firing, therefore, could not establish a causal connection between the two.    See Brungart, 231 F.3d at 799.    Further, Bell's suggestion that others could have told Woody he complained about being called "boy" is the exact type of speculation we've rejected before.    See Clover, 176 F.3d at 1355 (noting that "could have told" is not the same as "did tell," and amounts to pure speculation).

Finally, even assuming that Bell's cited evidence did indicate that Woody departed from City policy in terminating him, that Woody treated him more harshly than other employees, and that the City subsequently listed fewer reasons for his firing than those provided by Woody, it still does not establish that Woody was actually aware of his protected expression.    In the § 1981 context, Woody must have been actually aware that not only had Bell complained to HR, but that he had complained specifically of racial discrimination.    See Clover, 176 F.3d at 1354; Johnson, 421 U.S. at 459-460.    Here, Bell's circumstantial evidence was insufficient to show that, as a matter of law, Woody was lying when he unequivocally stated that he was unaware of any complaints of racial discrimination at the time he terminated Bell.    See Brungart, 231 F.3d at 799.

8

In short, because Bell did not establish at least two prongs of a prima facie case of retaliation, the district court did not err in granting summary judgment in favor of the City.  See Goldsmith, 996 F.2d at 1163.

**AFFIRMED**.