**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-12266

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff,*

RAMNARINE BOODOO,

*Plaintiff-Appellant,*

*versus*

ALABAMA PSYCHIATRY LLC,

RIVER REGION PSYCHIATRY ASSOCIATES LLC,

SHANKAR B. YALAMANCHILI,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:23-cv-00460-ACA

————————————

Before JORDAN, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Ramnarine Boodoo appeals the district court's order granting summary judgment in favor of his former employer, Alabama Psychiatry, LLC, on his retaliation claim under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). Because the district court properly granted summary judgment, we affirm.

**I**

We review a grant of summary judgment de novo, "viewing all evidence in the light most favorable to the nonmoving party and resolving all reasonable inferences in favor of the nonmoving party." *Al-Rayes v. Willingham*, 914 F.3d 1302, 1306 (11th Cir. 2019). As part of this review, we may affirm "on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

The FCA creates a private right of action for an individual whose employer retaliates against him for participating in an FCA action or in response to other efforts the employee engages in to stop a violation of the FCA. *See* 31 U.S.C. § 3730(h)(1). *See also Hickman v. Spirit of Athens, Alabama, Inc.*, 985 F.3d 1284, 1287–88 (11th Cir. 2021).

"In an FCA retaliation case, as in a Title VII retaliation case, a plaintiff begins by showing that '(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities.'" *Ruffolo v. Halifax Health, Inc.*, No. 23-12760, 2024

WL 1733968, at *1 (11th Cir. Apr. 23, 2024) (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997)). If the plaintiff makes such a showing, the defendant then has the burden of producing a legitimate, non-retaliatory reason for the challenged employment action. *See Gogel v. Kia Motors Manufacturing of Georgia, Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc). *See also Ruffolo*, 2024 WL 1733968, at *2. If the defendant does so, then "the employee must prove that the employer's proffered reason was a pretext for retaliation." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023).

"To prove that an employer's explanation is pretextual, an employee must cast enough doubt on its veracity that a reasonable factfinder could find it 'unworthy of credence.'" *Id.* (quoting *Gogel*, 967 F.3d at 1136). If the employer's proffered reason "is legitimate—in other words, if it might motivate a reasonable employer to act—then the employee must address 'that reason head on and rebut it.'" *Id.* (quoting *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022)).

To rebut an employer's proffered reasons and "establish pretext at the summary judgment stage, a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Gogel*, 967 F.3d at 1136 (citation and quotation marks removed). "An employee cannot rebut a reason by simply quarreling with the wisdom of it." *Berry*, 84 F.4th at 1308 (citation and

quotation marks removed).  Additionally, an employer's proffered reason "is not pretext for retaliation unless it is shown *both* that the reason was false, *and* that retaliation was the real reason."  *Gogel*, 967 F.3d at 1136 (cleaned up).

## II

We recount only certain allegations here.  Dr. Boodoo is a psychiatrist who worked for Alabama Psychiatry.  While employed there, Dr. Boodoo told a probate judge that he believed Alabama Psychiatry was committing fraud.  In an email to that judge, for example, Dr. Boodoo said that a local hospital—which he stated was owned by an entity that had settled FCA allegations against it with the U.S. Department of Justice—was colluding with Alabama Psychiatry to "defraud patients, Medicare and Medicaid."  The judge relayed Dr. Boodoo's concerns to the relevant medical centers and to the county's district attorney.

Dr. Boodoo resigned one week after sharing his concerns with the probate judge.  Pursuant to his employment agreement, Dr. Boodoo provided 120-days' notice of his resignation and, consistent with that timeline, stated that his last day of employment would be January 31, 2020.

In the days following notice of his resignation, Alabama Psychiatry compiled various complaints about Dr. Boodoo.  Dr. Boodoo also received a letter from Alabama Psychiatry's legal counsel, which addressed "several matters concerning [Dr. Boodoo's] employment with Alabama Psychiatry" including his comments to the judge.  Dr. Boodoo responded to the letter the following week to

"dispute much" of it and to respond to several of the complaints. Soon after, Dr. Boodoo was put on a performance improvement plan. That plan identified "action items to improve" and referenced the "possibility of immediate termination" if improvement was insufficient.

Alabama Psychiatry hired another psychiatrist, Dr. Eddie Huggins, Jr., who began working at the hospital about two months after Dr. Boodoo had submitted his resignation. About two weeks later, Alabama Psychiatry notified Dr. Boodoo by letter that it was terminating his employment effective that day.

The employment agreement allowed Alabama Psychiatry to require Dr. Boodoo to "cease performing services . . . at any time during [the] one hundred twenty (120) day period" in which he had noticed his resignation. Alabama Psychiatry referenced that provision in its termination letter and also stated that its decision to "exercise its contractual right to accept [Dr. Boodoo's] voluntary resignation and provide for an earlier departure date" was a "necessary decision" based on "issues regarding [Dr. Boodoo's] employment as explained in prior correspondence and in [Dr. Boodoo's] Performance Improvement Plan and follow up reports."

Dr. Boodoo alleges that he was terminated before the end of the notice period in retaliation for his efforts to prevent the submission of false claims to Medicare in violation of the FCA. Alabama Psychiatry contends it had legitimate, non-retaliatory reasons for its early discharge of Dr. Boodoo.

## III

We assume without deciding that Dr. Boodoo established a prima facie case of retaliation and consider, instead, whether he demonstrated (or created an issue of fact) that Alabama Psychiatry's proffered explanations were pretextual.

Alabama Psychiatry provided several reasons for terminating Dr. Boodoo before the expiration of the 120-day notice period set forth in the employment agreement. One reason was that Alabama Psychiatry had hired Dr. Boodoo's replacement, Dr. Huggins, based on having received Dr. Boodoo's resignation letter, and it was not economical to maintain both psychiatrists.

Successfully hiring a new employee to fill the role of an employee who had already noticed his resignation "might motivate a reasonable employer" to seek an earlier discharge of the resigning employee (particularly where the employment agreement allows for it). *See Berry*, 84 F.4th at 1307. Thus, to succeed on summary judgment, Dr. Boodoo must rebut that reason "head on." *Id.* at 1307–08 (citing *Patterson*, 38 F.4th at 1352).

Dr. Boodoo attempts to rebut Alabama Psychiatry's proffered reason that it accepted his resignation because it had hired his replacement by asserting that the hiring was further "evidence of the fraudulent scheme" because the replacement doctor—unlike Dr. Boodoo—was "willing to cooperate with Alabama Psychiatry" and the local hospital in defrauding Medicare. We are unpersuaded.

Dr. Boodoo does not contest that Dr. Huggins began working for Alabama Psychiatry in the period between Dr. Boodoo's notice of resignation and later termination. Dr. Boodoo, therefore, has not shown that this reason proffered by Alabama Psychiatry was "false"—which, along with showing that retaliation was the "real reason" for the termination, is necessary to defeat summary judgment. *See Gogel*, 967 F.3d at 1136 (citation and quotation marks removed). Additionally, Dr. Boodoo's unsubstantiated concerns that his replacement was complicit in the alleged fraud is akin to "quarreling with the wisdom" of his employer's decision, which is insufficient to withstand summary judgment. *See Berry*, 84 F.4th at 1308 (cleaned up).[1]

Dr. Boodoo also argues that this proffered reason was not referenced in his termination letter, performance improvement plan, or any other prior correspondence. Nor, Dr. Boodoo maintains, did such documents suggest that his services were no longer needed. But the analysis is not limited to the reasons stated in writing at the time of termination. *Cf. Gogel*, 967 F.3d at 1154 (Wilson, J., concurring) ("[W]hat sophisticated employer, after 54 years of Title VII jurisprudence, would state in a termination letter that the

---

[1] Dr. Boodoo relies on text messages, sent from a nurse practitioner with whom he worked, stating that Dr. Huggins had been instructed to do "nothing but sign" patient notes written by the nurse practitioners. The district court declined to consider such evidence as inadmissible hearsay, and Dr. Boodoo has not persuasively explained why that ruling was an abuse of discretion.

employee is fired for bringing a discrimination complaint against the company?").

Moreover, Alabama Psychiatry proffered additional legitimate, non-retaliatory reasons for terminating Dr. Boodoo before the expiration of the 120-day contractual notice period—namely, that it received complaints about Dr. Boodoo from patients and hospital staff and that Dr. Boodoo's work performance was unsatisfactory. Dr. Boodoo contends that Alabama Psychiatry's complaints about his appearance and timeliness are pretextual because they had been initially resolved but then were reopened after he complained about the alleged fraud. He also denies the accuracy of the complaints from patients and staff; states that his decision not to discharge a patient whose wife later complained was supported by Alabama law; and maintains that Alabama Psychiatry has not shown that it substantiated the complaints against him and, instead, "went looking for complaints" after Dr. Boodoo's resignation notice to "use as a tool to coerce Dr. Boodoo into compliance with its unlawful scheme[.]"

Dr. Boodoo has not demonstrated "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reasons such that a reasonable factfinder would find them unworthy of credence. *See Gogel*, 967 F.3d at 1136 (citation and quotation marks removed). Although Dr. Boodoo denies the complaints or seeks to offer explanations for them, "quarreling with the wisdom" of Alabama Psychiatry's reliance on the complaints as a reason for its early termination of Dr. Boodoo is insufficient to

24-12266                Opinion of the Court                9

successfully rebut Alabama Psychiatry's proffered legitimate explanations. *See Berry*, 84 F.4th at 1308 (citation and quotation marks removed).

Ultimately, to defeat a summary judgment, "an employee must establish a genuine dispute of material fact that the employer's reason is pretextual." *Id.* Dr. Boodoo failed to do so. Summary judgment to Alabama Psychiatry was appropriate.[2]

## IV

We affirm the district court's grant of summary judgment in favor of Alabama Psychiatry.

**AFFIRMED.**

---

[2] Dr. Boodoo contends on appeal that Alabama Psychiatry took two adverse employment actions against him in addition to discharge—namely, that he suffered threats and harassment. Dr. Boodoo did not, however, allege in his complaint that he was harassed. And while Dr. Boodoo did allege that certain actions constituted "threats"—like his employer's concerns with his discharge of patients and his receipt of certain correspondence from his employer—those actions, as discussed above, are legitimate business concerns proffered by Alabama Psychiatry that he has not sufficiently rebutted.