**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11070

Non-Argument Calendar

_____

ERICA M. CHRISWELL,

*Plaintiff-Appellant,*

*versus*

AMERICOLD ACQUISITIONS,
AMERICOLD LOGISTICS,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-04219-WMR

_____

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Erica Chriswell, proceeding pro se, sued her former employer, Americold Acquisition and Americold Logistics, LLC (collectively, "Americold"), for retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"). Chriswell appeals the District Court's denial of her motion for summary judgment and grant of summary judgment for Americold.

## I. BACKGROUND

In October 2023, Chriswell filed an Amended Complaint against her former employer Americold—a cold storage warehousing company. She claimed that Americold fired her in retaliation for engaging in conduct protected by Title VII and § 1981. Chriswell pointed to two specific incidents of protected activity. First, in March 2021, Chriswell informed Americold's Human Resources Department ("HR") about the inappropriate behavior of her direct superior, Brock Merridith, and Americold "did nothing to protect" her. Second, in May 2021, a friend and coworker of Merrideth's, Allen Burrell, "harass[ed], insult[ed], and threaten[ed]" Chriswell, and she immediately reported it to HR. The next day, she was fired despite allegedly "never [having] gotten even one write-up," being "on time each day," and having "never been involved in a verbal altercation of any sort."

Both parties moved for summary judgment. As the District Court noted, Chriswell failed to file a proper response to Americold's summary judgment motion as required by the Court's local

rules.[1] The consequence of Chriswell's failure is that Americold's Statement of Material Facts ("SOMF") is deemed admitted. We do, however, hold a pro se litigant's pleadings to a "less stringent standard" and "liberally construe[]" documents filed pro se. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). Therefore, we agree with the District Court's decision to construe any alternative

---

[1] Northern District of Georgia Local Rule 56.1 provides:

> (1) A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. . . .

> (2) A respondent to a summary judgment motion shall include the following documents with the responsive brief:

>> (a) A response to the movant's statement of undisputed facts.

>>> (1) This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.

>>> (2) This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).

facts Chriswell cited in her filings made in response to Americold's SOMF as disputes. Accordingly, we derive the following facts primarily from Americold's SOMF but make note of any facts arguably disputed by Chriswell's responses.

## A. Material Facts

In November 2019, Chriswell initiated a Facebook messenger conversation with her superior Brock Merridith. Chriswell began sending "sexually suggestive" messages to Merridith and the exchange evolved into a thread of mutually flirtatious messages. In her response to Americold's SOMF, Chriswell maintains that she only engaged in the flirtation with Merridith because "Merridith had started all her problems at work, and he knew he could get her fired if he wished." But in October of 2020, Chriswell went to Merridith in person and told him that she no longer wanted to engage in the flirtation. After that conversation, Merridith "stopped sending sexual messages and flirting" with Chriswell, but Chriswell alleged that Merridith retaliated by "excluded [her] from the workday" by assigning her responsibilities to another employee.

Around March 2021, Americold's Operations Manager and one of Chriswell's supervisors, Tracy Price, "began observing issues in [Chriswell's] performance and workplace demeanor." Specifically, Price cited one instance of dishonesty and one instance of insubordination.

Also in March 2021, Chriswell texted General Manager Sam Metcalf to report that she believed Merridith and HR Generalist Michelle Baillie were involved in a romantic relationship. Metcalf

relayed Chriswell's report to HR Manager Arnold Smith who investigated the claim. As part of his investigation, Smith met with Chriswell. Following the meeting, Chriswell summarized their conversation in an email in which she alleged that Merridith and Baillie's "improper relationship" had led to Baillie breaching confidentiality by sharing HR reports and employee salary information with Merridith.

On the morning of May 4, Chriswell had a verbal altercation with truck lift operator Allen Burrell. According to witness reports, Chriswell had attempted to jump into Burrell's conversation with someone else. Burrell responded by calling her "nosey." Chriswell reportedly responded, "Fuck you." Burrell reported that he responded by pointing out that if he had spoken to Chriswell in that way, she would have reported him to HR. But another witness reported that Burrell responded by calling Chriswell a "hood rat." At 11:29 a.m., Chriswell reported the altercation to Arnold Smith, alleging that Burrell made the comments about HR because Baillie had leaked Chriswell's March 2021 HR report to Merridith and the rest of the dock staff.

At 3:04 p.m., Smith forwarded a witness statement about the altercation to Price, Merridith, Baillie, and Metcalf with the question, "Team[,] Based on these statements and the history of Erica Chriswell's behavior, what is your recommendation?" Price responded, "I think it's time we cut ties. This individual does not work well with others." Merridith and Metcalf agreed.

"Around 3pm or a little after," Smith met with Chriswell to discuss the altercation with Burrell. According to Smith's report, when asked if Chriswell had said "fuck you" to Burrell, Chriswell responded that Burrell was "lucky he didn't get more." Smith further reported that Chriswell complained that the office was sexually charged, and her female coworkers were "harassing her." Later that night, Chriswell followed up with an email to Smith "claiming that Burrell was retaliating against her for reporting 'his boss and friend Brock Merridith' to HR."

The next day, Smith compiled his conversations with Chriswell, witness statements, and his investigative report and submitted them to HR Director Traci Golden along with his conclusion that he "support[ed] the decision of Management to terminate [Chriswell's] employment." Americold fired Chriswell that same day.

### B.  Motions for Summary Judgment

Two months before the close of discovery, Chriswell moved for summary judgment, arguing "nothing that the Defense counsel presented [in discovery] raises a dispute of material fact." Americold responded by filing, among other things, a declaration from their lead counsel stating that because discovery was not yet complete, Americold could not "fully respond" to Chriswell's motion for summary judgment. The Court did not rule on the motion, and the parties continued the discovery process.

After the close of discovery, Americold moved for summary judgment. First, Americold argued that Chriswell's § 1981 claim

fails because she conceded that she was not discriminated against on the basis of race, and she did not present facts showing that she participated in any activity protected by § 1981. Thus, Chriswell can claim neither discrimination nor retaliation under § 1981. Second, Americold argued that Chriswell's Title VII retaliation claim fails because she failed to present any evidence that she engaged in activity protected by Title VII and, even if she had made such a showing, she did not show that the relevant decisionmakers considered Chriswell's HR reports or other allegedly protected disclosures when making the decision to fire her.

### C. District Court's Grant of Summary Judgment for Americold

The magistrate judge recommended that Chriswell's motion for summary judgment be denied and Americold's motion for summary judgment be granted. The District Court agreed, dismissing Chriswell's § 1981 claim because Chriswell "fail[ed] to cite any evidence of racial discrimination as a motivation for her termination." The Court also dismissed Chriswell's Title VII retaliation claim because Chriswell (1) likely did not engage in activity protected by Title VII, (2) failed to demonstrate a causal connection between the alleged protected activity and her termination, and (3) cannot demonstrate a pretextual motive for her for termination.

Chriswell timely appeals. While we find fault with the District Court's conclusive application of the *McDonnell Douglas* framework at the summary judgment stage, we apply the proper standard and ultimately agree with their conclusion.

## II. STANDARD OF REVIEW

"We review a district court's decision on summary judgment de novo and draw all reasonable inferences in the nonmoving party's favor." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

## III. DISCUSSION

Chriswell makes no mention of her § 1981 claim in her initial brief on appeal. Thus, she has abandoned that claim. *See United States v. Campbell*, 26 F.4th 860, 871–74 (11th Cir. 2022) (holding that failure to raise an issue in an initial brief on direct appeal should be treated as a forfeiture of the issue).

Chriswell exclusively appeals the District Court's dismissal of her Title VII retaliation claim. One avenue by which a plaintiff may demonstrate Title VII employment retaliation is the three-step *McDonnell Douglas* approach. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). At step one, "the employee must establish a prima facie case of retaliation by proving that she engaged in statutorily protected conduct; she suffered an adverse employment action; and a causal relation exists between the two events." *Berry*, 84 F.4th at 1307. At step two, "the employer may

proffer a legitimate, nonretaliatory reason for the adverse action." *Id.* (internal quotation marks omitted). At step three, "the employee must prove that the employer's proffered reason was a pretext for retaliation." *Id.*

While the *"McDonnell Douglas* framework is one 'tool' that helps an employee prove retaliation with circumstantial evidence," it is not "an inflexible rule." *Id.* at 1310 (internal citations omitted). Indeed, "an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." *Id.* To create a reasonable inference of retaliatory intent, a plaintiff may present, among other things, "evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual." *Id.* at 1311.

### A. Chriswell's Claim Fails Under McDonnell Douglas

Chriswell primarily relies on *McDonnell Douglas* to show a genuine dispute of material fact. Specifically, she asserts that she met all three elements of the prima facie case for Title VII retaliation. We disagree. Chriswell failed to make out a prima facie case for retaliation because she failed to present evidence that she engaged in statutorily protected activity and, to the extent that any activity may have been statutorily protected, failed to draw a causal connection between the allegedly protected activity and her termination.

## 1. Protected Activity

Under Title VII, it is unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice" by Title VII, "or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3. It is an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [an individual's] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2. "Sexual harassment can constitute discrimination based on sex for purposes of Title VII." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000).

An employer need not be engaged in unlawful activity for an employee's protests to constitute protected activity. So long as the plaintiff demonstrates a "good faith" and "objectively reasonable" belief that the employer was engaging in unlawful employment practices, her protest of those practices in protected. *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998); *Little v. United Tech., Carrier Transicold Division*, 103 F.3d 956, 960 (11th Cir.1997).

On appeal, Chriswell alleges that two of her HR reporting events constitute protected activity under Title VII: (1) her March 2021 HR report concerning Merridith and Baillie, and (2) her May

2021 HR reports concerning Burrell. We conclude that none of the relevant reports were protected activity under Title VII.

First, in Chriswell's March 2021 report to HR, which she made in person and followed up with an email, she communicated her suspicion that two of her coworkers, Merridith and Baillie, were engaged in a romantic relationship. In her follow-up email, she stated that she had "personally been affected by the lack of professionalism" and that the alleged relationship was "interfering with fairness and confidentiality." Later, Chriswell testified in her deposition that she "didn't make . . . a complaint about sexual harassment" in her March 2021 conversation with HR. And when she was asked to confirm that her complaint to HR "was not a complaint of sexual harassment" she responded "yes." Instead, Chriswell reported to HR that "it was somewhat of a hostile environment" and that "it was [a] highly sexual environment."

While Chriswell complained of a hostile and sexual environment, she admits that her March 2021 HR complaint was not a claim of sexual harassment. Her report was nothing more than an objection to her coworkers' romantic relationship and to the potential that their relationship could lead to the spread of confidential information and impact the workplace culture. There is no evidence that Chriswell subjectively believed that she was reporting an unlawful employment practice. Nor would such a belief have been reasonable. Title VII does not make it illegal for coworkers to have a sexual relationship. Nor does it mandate any particular HR procedures, including confidentiality. Since Chriswell's report did

not oppose any employment practice made unlawful by Title VII, it is not protected by Title VII.

That leaves Chriswell's three May 4, 2021, reports about Burrell. First, Chriswell sent an email to HR at 11:29 a.m. in which she reported her altercation with Burrell. She stated that the encounter with Burrell confirmed her suspicions that Merridith and Baillie had breached the confidentiality of Chriswell's March 2021 HR report.

At 3:04 p.m., Smith emailed Chriswell's supervisors (Price, Merridith, Baillie, and Metcalf) the witness statements from the Chriswell-Burrell altercation. At 3:06 p.m., Price responded, "I think it's time we cut ties. This individual [Chriswell] does not work well with others." Merridith and Metcalf agreed at 3:09 p.m. and 3:12 p.m., respectively. Around the same time that Chriswell's supervisors were exchanging these emails, Chriswell met with Smith in person. Smith's notes from that meeting reflect that Chriswell renewed her complaint that Merridith and Baillie had leaked her HR report. She also admitted that she "may have" said "fuck you" to Burrell because he "called [her] a dummy." She reportedly concluded, "I said what I said after he said what he said and he is lucky he didn't get more."

Finally, at 10:32 p.m., Chriswell sent a lengthy email to Smith detailing the incident with Burrell. She stated that she "felt Burrell's statement was made in direct retaliation for his boss and friend Brock Merridith." She recharacterized her March 2021 report as a complaint about Merridith flirting with her and other

women in the office and sowing discord. She also referenced the "sexual harassment [she'd] undergone" and claimed to be "experiencing retaliation."

Chriswell's 11:29 a.m. email to Smith does not constitute activity protected by Title VII because it makes no reference to anything that might reasonably be considered an illegal employment practice—Title VII does not prohibit HR confidentiality breaches or instances of profanity in the workplace when they are unrelated to discrimination. The only May 4, 2021, HR reports that might be considered protected activity are Chriswell's 3:00 p.m. conversation with Smith and her 10:32 p.m. email to Smith. In those reports, Chriswell explicitly stated that she believed the incident with Burrell was retaliation for her March 2021 report. While those reports may reasonably be considered protected activity, and there is evidence that Chriswell believed them to be protected, they came too late to have possibly influenced the decision to fire Chriswell. We discuss this issue in the following section.

## 2. Causation

Chriswell bases her causation argument on temporal proximity between her HR reports in March 2021 and on May 4, 2021, and her termination on May 5, 2021. It is true that "proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. Bell-South Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). There is, however, an exception: "temporal proximity alone is

insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Id.* Additionally, as a matter of common sense, Chriswell cannot show a causal thread where her protected activity occurred *after* the relevant decisionmakers decided to fire Chriswell.

The evidence suggests that Price and Chriswell's other supervisors made the decision to terminate Chriswell. As Americold maintains, Arnold Smith was not the principal decision-maker in Chriswell's termination and Chriswell has offered no evidence to dispute that. The record also shows that Chriswell's in-person May 4 meeting with Smith began "around 3pm" and neither Price, Merridith, Baillie, nor Metcalf was present at that meeting. Chriswell has failed to show how the 3:12 p.m. decision to terminate her could possibly have been based on a report she made in a simultaneous meeting in which none of the decisionmakers were present. The same logic forecloses any argument that Chriswell's 10:32 p.m. email caused the termination.

Since Chriswell cannot identify a protected activity that occurred before the decision to terminate her, she fails to make a prima facie case under *McDonnell Douglas* and, therefore, the burden does not shift to Americold to state a non-retaliatory reason for her termination. The District Court began and ended its analysis with *McDonnell Douglas*, concluding that Chriswell's failure to present a prima facie case for retaliation necessarily meant that her Title VII claim should be dismissed. We disagree.

*B. Chriswell's Claims Fail to Create a "Convincing Mosaic"*

The District Court incorrectly applied the summary judgment standard in this case because it only considered Chriswell's claims through the prism of *McDonnell Douglas*. This court has long held that *McDonnell Douglas* "never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Instead, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quotation omitted). A plaintiff can create such a mosaic using "evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual." *Berry*, 84 F.4th at 1311.

Here, though, we find that Chriswell did not present the type of circumstantial evidence required to make a triable issue of fact. Her claims of suspicious timing are undercut by the fact she failed to show that she engaged in a protected activity *before* the decision was made to fire her. Without any information from

which a reasonable juror could infer an unlawful intent, Chriswell fails to raise a triable issue.

## IV. CONCLUSION

Given the foregoing analysis, we affirm the judgment of the District Court.

**AFFIRMED.**